Bush, Appellant, vs. Maxwell, Respondent.

*February 5 — February 24, 1891.*

*False representations: Special verdict.*

1. A judgment for the defendant, in an action by a grantee of mortgaged land, to recover back from the mortgagee the amount paid by him to discharge the mortgage, on the ground that he was induced to pay it by false representations of the defendant that such mortgage was a valid lien on the land, will not be reversed on appeal, merely because, among the questions submitted to the jury for a special verdict, there was none as to whether the defendant made the false representations alleged at the time the plaintiff paid the mortgage, in order to induce him to pay it; where the jury found that the mortgage was duly and voluntarily executed by the mortgagor, without any fraudulent intent, and that no fraud was practiced by defendant in obtaining it, and the evidence shows that defendant did not make any false representations to induce payment, and that plaintiff knew what the mortgage was given for when he paid it.

2. The failure of the jury to answer some of the questions submitted to them for a special verdict does not render their verdict insufficient to sustain the judgment, unless answers thereto favorable to the defeated party would necessarily render such judgment erroneous.

APPEAL from the Circuit Court for *Columbia* County. The following statement of the case was prepared by Mr. Justice Taylor as a part of the opinion:

This action was brought by the appellant to recover

from the respondent the amount of money paid to him by the appellant upon a certain note and mortgage claimed to be owned by the respondent, and which was claimed by him to be a lien upon certain real estate owned by the appellant. The material facts are the following:

In 1881 John E. Bush was the owner of about eighty acres of land, described in the complaint; and on the 17th day of March, 1881, he gave his note for $600 to Emeline Maxwell, the mother of the respondent, and at the same time executed his mortgage upon said land to said Emeline to secure the payment of said note, with the interest thereon. The mortgage was duly recorded in the register's office, February 10, 1887. The evidence clearly establishes the fact that such mortgage was given for the sole use and benefit of the defendant in this action. After the execution, delivery, and recording of said mortgage, and on the 3d day of November, 1888, the said John E. Bush conveyed said land to *Darius H. Bush*, the plaintiff in this action, by a warranty deed duly executed and delivered; and on or about March 28, 1889, the plaintiff conveyed said lands, by his deeds duly executed and delivered, a part to one Darius H. Bush, Sr., and a part to one Ellen Buckley. Before the deeds to Bush, Sr., and Ellen Buckley were delivered, the plaintiff knew of the existence of said note and mortgage given by said John E. Bush to the said Emeline Maxwell, and he knew that the same was given for the sole use and benefit of the defendant in this action; and, in order to satisfy this defendant for his said claim, a part of the money due him from the purchase of a part of said land conveyed to said Darius H. Bush, Sr., was with his consent, paid to the defendant to the amount of $510, and thereupon the defendant released said mortgage as to the property conveyed to said Bush, Sr.; and it was also then agreed between the parties that said mortgage was to remain a lien upon the lands conveyed to said Ellen Buckley

for the sum of $390, and the plaintiff's deed to said Ellen Buckley was made subject to said mortgage for the said sum of $390, and the balance of the purchase money for both tracts was paid to and received by the said plaintiff from said purchasers in full satisfaction for the purchase money of said lands.

The claim made by the plaintiff in his complaint is that said sums of $510 and $390 were obtained from the said plaintiff by false and fraudulent representations made by the defendant to the plaintiff at the time he allowed the same to be paid to him from the purchase money due him from the persons to whom he had sold said lands. The following are the allegations of fraud as set forth in the plaintiff's complaint, viz.:

" That on or about March 28, 1889, the plaintiff was selling said land, and then first learned of the mortgage held by the defendant; that the said defendant then falsely and fraudulently claimed to the plaintiff that he had a valid mortgage on said land, and claimed to be the owner thereof, and to settle the said claim and obtain a release of a portion of said land covered by said mortgage the plaintiff paid the defendant the sum of $510, which was wholly lost by the plaintiff, and also at the same time sold the balance of said land for $390 less, on account of said mortgage, and thereby he lost the said sum of $900 through the false and fraudulent claim and pretense of the defendant."

The complaint then goes on to set out the date of said mortgage claimed to be owned by the defendant, and its date of record, and then makes further allegations as follows, viz.:

" The plaintiff alleges, on information and belief, that the said John E. Bush did not sign, execute, or deliver the said mortgage to the said Emeline Maxwell, nor any one for her; that the said mortgage never had any legal or valid existence; that the said mortgagor never had any considera-

tion whatever for said mortgage; that the said mortgage
was made and signed by the defendant without the knowl-
edge or consent of the said John E. Bush, and without
giving him any value for the same, and fraudulently made
to cheat and defraud the said John E. Bush, or any one who
might purchase said land of him, and that by the said fraud
of the defendant in knowingly and fraudulently making
said mortgage and holding the same, and claiming said
mortgage to be legal and valid, the defendant did know-
ingly and falsely and fraudulently represent to the plaintiff
that said mortgage was valid; *that it was executed by the
said John E. Bush for the full consideration of $600, paid by
the said Emeline Maxwell, and was a legal, binding mort-
gage;* that defendant knew said statements were false and
fraudulent when made to the plaintiff; that said statements
of the defendant to the plaintiff were knowingly and fraud-
ulently made with intent to cheat and defraud the plaintiff,
and obtain from him the said sum of $510, and induce the
plaintiff to sell the balance of said land for $390 loss for the
benefit of the defendant; that plaintiff believed the said false
and fraudulent statements of the defendant made to the
plaintiff, and relied upon the superior experience and knowl-
edge of the defendant, and, relying upon such false and
fraudulent statements of the defendant, knowingly made
to this plaintiff as aforesaid, the plaintiff believed the said
mortgage had for a good consideration been signed, exe-
cuted, and delivered by the said John E. Bush, whereas
such statements were false, and the defendant knew they
were false at the time he made them to the plaintiff, and
the plaintiff, believing such statements, and relying upon
them, was induced thereby to pay the defendant the said
sum of $510, and to deed and convey a portion of said land
for $390 loss, and by the said false and fraudulent state-
ments knowingly made by the defendant to the plaintiff he
was cheated and defrauded of the sum of $900 as aforesaid,

on the 28th day of March, 1889; and that by reason of the said false and fraudulent representations and acts of the defendant, and his knowingly, unlawfully, and fraudulently obtaining the said sum of $510 of the plaintiff, and securing the said conveyance of part of said land for loss as aforesaid, the plaintiff was cheated and defrauded by the defendant to the amount of $900, and the defendant then became indebted to him in the said sum of $900; that the said sum of $900 became due and payable from the defendant to the plaintiff on the said 28th day of March, 1889, and before the commencement of this action, and is still due and wholly unpaid, and the defendant is now justly indebted to the plaintiff for said sum of $900, and interest thereon from the 28th day of March, 1889. Wherefore the plaintiff demands judgment against the defendant for $900, and interest thereon from the 28th day of March, 1889, besides the costs of this action."

The answer denies all fraud and all fraudulent representations as alleged in the complaint, and alleges " that the note and mortgage for $600 were given to him to pay an indebtedness then due from said John E. Bush to the defendant, also to secure the future services of the defendant as an attorney, and also in part as a gift from John E. Bush to the defendant." He denies all fraud in obtaining the note and mortgage from said John E. Bush, and alleges that said note and mortgage were duly and voluntarily executed by the said John E. Bush. The answer further alleges that before the said plaintiff paid or allowed to be paid to him the said $900, as charged in the complaint, he fully explained to the plaintiff in detail the facts and circumstances under which said note and mortgage were given, and what the consideration was for giving the same. The answer then makes the further allegations, viz.:

" That on the said 28th day of March, A. D. 1889, there was due on said note and mortgage the sum of $984, and

the plaintiff was then informed of the amount so due; and that after the plaintiff was so informed as aforesaid as to the manner of giving said mortgage, the consideration therefor, and the amount due thereon, the plaintiff agreed to pay the defendant in payment, settlement, and release of the said mortgage the sum of $900. That in pursuance of said agreement the plaintiff voluntarily paid the defendant the sum of $510, and conveyed a part of said mortgaged premises to Darius H. Bush, Sr., who agreed to pay the defendant, for said Emeline Maxwell, the sum of $390, the same being the balance of the $900 agreed to be paid by the plaintiffs as aforesaid; and the defendant did, in pursuance of said agreement and in consideration of the payment of said $510, procure from said Emeline Maxwell, and deliver to the plaintiff, a release of said mortgage from one half of said mortgaged lands. The defendant denies that he at any time made or used any false or fraudulent representations to the plaintiff, and he denies that he fraudulently obtained any money or other property from the plaintiff or in any way defrauded him."

The case was tried by the court and a jury. A special verdict was submitted to the jury, containing twelve questions. Eight of the questions were answered by the jury favorable to the defendant, and questions 6, 8, 11, and 12 were not answered. The questions not answered were as follows: " (6) Did *John S. Maxwell*, at the time of the execution of said mortgage, namely, March 17, 1881, read the contents thereof, or explain the same, to the said John E. Bush, before said Bush signed it?" "(8) Was John E. Bush indebted to the defendant, *John S. Maxwell*, on the 17th day of March, 1881, in any sum for legal services and money advanced by him, and, if so, how much?" "(11) Did the defendant, *John S. Maxwell*, at the time of the sale of the premises described in the mortgage to *Darius H. Bush*, namely, March 28, 1889, know that the said mort-

gage was a forgery, or that it was void; and did he represent the same to this plaintiff to be a good and valid mortgage, with intent thereby to cheat and defraud this plaintiff by obtaining money from him through false representations? (12) At what sum do you assess the plaintiff's damages?"

The verdict of the jury was received by the court, and the jury discharged, and thereafter, upon motion of the defendant, and against the objections of the plaintiff, the court rendered judgment in favor of the defendant for the costs of the action. The plaintiff appeals from said judgment.

For the appellant there was a brief by *G. J. Cox* and *John J. Sutton*, and oral argument by *John J. Sutton* and *I. C. Sloan.* They took the ground that the mortgage was presumptively invalid, being given by a client to his attorney, and the burden of proving its validity was on the defendant. *Brock v. Barnes*, 40 Barb. 521; *Jennings v. McConnel*, 17 Ill. 148; *Howell v. Ransom*, 11 Paige, 538; *Whitehead v. Kennedy*, 69 N. Y. 466; *Newman v. Payne*, 2 Ves. Jr. 199; *Ellis v. Messervie*, 11 Paige, 467; *Evans v. Ellis*, 5 Denio, 640; *Ford v. Harrington*, 16 N. Y. 285; *Brotherson v. Consalus*, 26 How. Pr. 219; *Burnham v. Heselton*, 82 Me. 495. The omission of the jury to pass upon all the questions submitted to them was a failure to dispose of the issues, and must of necessity require a new trial. *Cotzhausen v. Simon*, 47 Wis. 103; *Johnson v. Ashland Lumber Co.* 47 id. 326; *Bell v. Shafer*, 58 id. 223; *Kirkhoff v. Atlas Paper Co.* 68 id. 674.

*J. H. Rogers*, for the respondent, contended that fraud is not to be presumed, even in dealings between attorney and client, but must be affirmatively proved by the party asserting it. *Starr v. Vanderheyden*, 9 Johns. 253; *Kisling v. Shaw*, 33 Cal. 440. The plaintiff having paid after being fully informed of the facts relating to the mortgage and its

consideration, is estopped from setting up those facts as constituting fraud. Only material and issuable questions need to be submitted to the jury or answered by them. *Eberhardt v. Sanger*, 51 Wis. 72; *Hutchinson v. C. & N. W. R. Co.* 41 id. 553; *Ault v. Wheeler & Wilson Mfg. Co.* 54 id. 304; *Weisel v. Spence*, 59 id. 309; *Munkwitz v. Uhlig*, 64 id. 380.

TAYLOR, J. The gist of the plaintiff's cause of action is founded upon the allegations in the complaint that the defendant, at the time he obtained the $900 from the plaintiff, did so by making false representations as to the validity of the mortgage he claimed to hold and own upon said lands, which the plaintiff had purchased from John E. Bush; and, in order to make out any cause of action against the defendant, he must not only show that the mortgage of the defendant was not a valid and legal claim upon said lands, but he must further show that at the time he paid him the $900 in money and got his lands released from said mortgage, the defendant made false statements in regard to said mortgage for the purpose of inducing the plaintiff to pay the same, and that the plaintiff, relying upon such false statements, was induced to pay said mortgage.

After carefully considering the evidence in the record and the findings of the jury, we think the plaintiff has entirely failed to make out either of said propositions. The jury find by their answer to question 4 "that John E. Bush, on the 17th of March, 1881, signed the mortgage given by him to Emeline Maxwell, reciting a consideration of $600, conveying the premises in question." By their answer to question 5 they find such mortgage was duly witnessed and acknowledged on the day it bears date. By the answer to question 7 they say that the said John E. Bush signed it freely and voluntarily on his part. By their answer to question 9 they say that part of the consideration for said

mortgage was intended as a gift to the defendant. By their answer to question 10 they say that the defendant did not make, execute, or forge the signature of John E. Bush to said mortgage, or cause it to be recorded in the register's office with intent thereby to cheat and defraud the said John E. Bush or his grantees of the premises described in said mortgage. The jury, by their answers to the above questions, have fully exonerated the defendant from practicing any fraud upon John E. Bush in obtaining said mortgage from him, or of obtaining such mortgage for the purpose of defrauding the grantees of said John E. Bush.

These findings of fact seem to us to be well supported by the evidence. There is nothing which tends to contradict them, except the simple declaration of the old man, feeble mentally and physically, that he never gave the mortgage. That he executed the mortgage freely there can scarcely be a doubt under the evidence. Whether he fully comprehended the exact nature of the transaction may admit of question, and were he before the court asking to have the mortgage set aside either in whole or in part, there might be reasons founded on the evidence which would justify a court of equity in granting him relief as to some part of the mortgage debt. But he is not asking to avoid the mortgage; and, as the evidence shows that no actual fraud was practiced by the defendant in obtaining the same, it will not be set aside in favor of his grantee, unless such grantee was induced to pay the same by false representations made by the defendant with the purpose of inducing such payment.

No question was submitted to the jury upon the point as to whether the defendant made any false representations to the plaintiff at the time he paid the mortgage, in order to induce him to make such payment. Though this seems to be the very gist of the plaintiff's claim, the jury were not asked to pass upon it by their special verdict. As no ex-

ception was made by either party to the questions submitted to the jury, and no request to submit other questions, we cannot reverse the judgment for that cause, if upon an examination of the evidence in the case 'it appears that there is no evidence which would sustain a finding in favor of the plaintiff upon that issue. Upon reading the evidence, we think it is clear that both the court and the parties concluded that no false representations were made to induce the defendant to pay the mortgage, unless it could be proved that the execution of the mortgage by John E. Bush had been procured by the fraud of the defendant; and so all the questions submitted were intended to determine the question of fraud on the part of the defendant in procuring the mortgage from John E. Bush, and, having failed in that, the plaintiff necessarily failed in his action. A careful examination of the evidence shows that the plaintiff. knew when he paid the mortgage that it was given in great part by John E. Bush to the defendant as an intended gift, or, in fact, as a gift in part for future services and in part for an antecedent debt. The testimony upon this point is substantially as follows: The plaintiff testifies that all he' can remember the defendant told him about the mortgage to induce him to pay it was that the defendant said the mortgage was " given partly as a present and partly for work done for John Bush." In another place in his testimony he says: " We were talking about this mortgage, what it was given for, when it was given, and who was present when it was given. *Mr. Maxwell* said what it was· given for, but did not tell me about the facts and circumstances about giving it. He simply said it was a gift; that is what he said." Plaintiff also testifies that " he told *Maxwell* that he would settle his mortgage for $900, and it was·settled for that." Mr. Stephens, a witness for plaintiff, and the person who drew the deeds from the plaintiff to Darius H. Bush, Sr., and William Buckly, and who assisted

in the settlement with the defendant in regard to his mort-
gage, testified, among other things, "that the defendant
said that a part of the mortgage was made up for fees. I
asked, in the presence of the plaintiff and of Darius H.
Bush, Sr., what that mortgage was made up of, and he said
a part was for services he had performed, and the rest of it
was a present he had given him.— I asked him if he would
take out of the mortgage a reasonable fee — a fair compen-
sation — for what he had done for the old gentleman, and
give the rest over to the young man [meaning the plaintiff];
and he said he would not. That was about all the talk I
had with him on this occasion."

The evidence clearly shows that the plaintiff was suffi-
ciently informed at the time he settled and paid the mort-
gage to the defendant as to what the mortgage was given
for, and, if the plaintiff was of opinion that the considera-
tion was not sufficient to justify the defendant in claiming
the amount paid thereon, or if he desired to contest the
validity of the mortgage as a gift from John E. Bush to
the plaintiff, he should have refused to pay the same; but,
having paid the same voluntarily, with full knowledge of
all the facts, he cannot now recover the money back. That
the plaintiff did not rely upon the want of a sufficient con-
sideration for the mortgage, or upon its invalidity as a gift,
is indicated by the facts alleged in the complaint. He
knew what the defendant claimed was the consideration
for it when he paid it, as the evidence clearly shows, and
in his complaint he seeks to avoid it, not so much because
there was a want of consideration, but upon the ground
that John E. Bush did not sign, execute or deliver the
same; that said mortgage had no legal existence; and that
it was made and signed without the knowledge or consent
of said John E. Bush, and without any consideration there-
for. These most material facts of the complaint are wholly
unproved, and the jury, upon all the evidence in answer to

the questions above quoted, have found that they were untrue in fact. As the evidence in the case shows conclusively that the material issue made by the pleadings, and not submitted to the jury as a part of their special verdict, must, if submitted, have been found in favor of the defendant, this court will not reverse the judgment because such issue was not submitted to the jury. Upon the evidence, it is an undisputed fact in the case.

It is urged by the learned counsel for the appellant that the failure of the jury to answer some of the questions submitted to them is fatal to the judgment. We think a failure of the jury to answer questions submitted to them does not render the verdict insufficient to sustain the judgment unless the answer to such questions favorably to the party against whom the judgment is rendered would necessarily make such judgment erroneous. In the case at bar, an answer to the sixth and eighth questions submitted to them most favorably to the plaintiff's side of the case would not have changed the result upon the question as to whether the plaintiff or the defendant was entitled to judgment upon the verdict. The eleventh question was necessarily answered by the answer to the tenth question, and should only have been submitted for their answer if they answered the tenth question favorably to the plaintiff. An affirmative answer to the eleventh question would have been entirely inconsistent with the answers to the other questions in the verdict. The twelfth question, upon the subject of damages in favor of the plaintiff, must necessarily have been answered in the negative to be consistent with the answers given to the other questions submitted to them.

The exceptions taken to the instructions of the court to the jury were not well taken. The rule as to the burden of proof as to the fraud alleged in the complaint was correctly stated to the jury. Whether that rule would apply had John E. Bush brought an action to set aside the mortgage

need not be decided in this case.  We do not find any substantial errors in the record, and upon the evidence in the record the plaintiff could not recover in any view of the case.

*By the Court.* — The judgment of the circuit court is affirmed.