DERLEDER, Plaintiff and Respondent, vs. PIPER and another, Defendants and Appellants: HEREK, Defendant and Respondent.

*November 5—December 2, 1941.*

270

· For the appellants there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point, attorneys, and *Regan & McCue* of Milwaukee and *Clifford W. Peickert* of Stevens Point of counsel, and oral argument by *Mr. R. T. Reinholdt* and *Mr. Peickert*.

*Royal M. Galvin* of Stevens Point, for the respondent Hilda Derleder.

For the respondent' Phillip Herek there was a brief by *Jenkins & Nason* of Stevens Point, and oral argument by *L. M. Jenkins*.

ROSENBERRY, C. J.   We shall not attempt to state all of the facts in this case but only such facts as are necessary to an understanding of the questions to be disposed of.

On the evening of November 30, 1939, between 9:30 and 10 o'clock, three cars were traveling easterly on Highway No. 10, about ten miles east of Stevens Point and east of the village of Custer. The first automobile (1936 Chevrolet sedan) owned by Frank Haffner was being driven by Leland Zuehlke. In the front seat with Zuehlke was Beatrice Haffner, daughter of the owner. In the rear seat were Haffner, his wife, their daughter, and the small son of Mrs. Haffner. The road surface was dry, there was no snow. Zuehlke was driving the Haffner car at the rate of twenty-five miles an hour, and was gradually overtaking a slowly moving freight train on the Soo railroad which parallels Highway No. 10 at that point. The smoke from the engine drifted to the north over and across the highway. The occupants of the Haffner car testified that up to a time shortly before the accident they could see a distance of one hundred fifty feet. Front and rear lights were burning. When the smoke commenced to drift across the highway the speed of the Haffner car was gradually reduced to fifteen miles an hour or less. From all the testimony it appears that the smoke increased in density as they traveled east. Haffner testified they traveled about one hun-

dred feet in dense smoke when they were hit in the rear by the Piper car (1937 standard Ford coach). Piper, who was alone in his car, was following some distance in the rear of the Haffner car. He testified that the night was foggy, that he was driving with his lights focused on the road, that after leaving Stevens Point he estimates his speed at twenty-five to thirty miles an hour, and could see ahead a distance of one hundred twenty-five to one hundred thirty feet. He testified that east of Custer he collided with a car which proved to be the Haffner car. He did not see the freight train and did not know that one was on the track. He encountered no smoke according to his testimony from the time he left Custer until he hit a dense cloud of smoke and he traveled about two car lengths in this dense smoke when he struck the Haffner car which he saw when he was about fourteen feet from it. Up to that time he had noticed no smoke. He had just got out of his car on the right hand when his car was hit in the rear by the Herek car. He estimates the time between the two collisions at six or seven seconds. He said: "There was nothing I could do from the time I got out of my car to prevent the Herek car from striking my car." He testified that his taillight and both headlights were burning. The Herek car and the Piper car were about ten feet apart when they came to rest. Piper did not know that another automobile was following him, saw no lights in his rear-vision mirror, and saw no lights ahead of him. The first time he knew a car was ahead of him was when he was fourteen feet away. The Herek car, a 1929 Ford coach, in which the plaintiff was a guest, was following the Piper car. It was being driven by Herek. They had stopped at a dance hall at Custer and were on their way to another dance at Amhurst on Highway No. 10. Herek testified that he was driving at a speed of thirty to thirty-five miles an hour, had not seen the Piper automobile before running into it; that it was foggy; that a thick smoke had

come across the highway and down suddenly; that he had just taken his foot off the gas to stop the car but did not have time to get his foot on the brake when the collision occurred. Both he and the plaintiff testified that they had seen no smoke that they could notice prior to that time. Herek did not know that a train was proceeding easterly on the tracks at the time. Herek testified that after he ran into the smoke he drove about ten or fifteen feet before the collision occurred. When he hit the Piper car he did not know with what he had come in contact.

Upon the trial the jury found that Piper was causally negligent in three respects: Excessive speed, failure to keep a proper lookout, and not having his car under proper control. The jury also found Herek causally negligent in three respects: By driving at an excessive speed, by not keeping a proper lookout, and by not having his car under proper control. They found that of the total negligence which caused the injuries to the plaintiff, seventy-five per cent was attributable to Piper and twenty-five per cent to Herek. They found that the plaintiff was free from negligence.

As respects the defendant Piper there is sufficient evidence in the record to sustain the finding of the jury. The principal contention of Piper upon this appeal is that neither the negligence of Piper in running into the Haffner car nor his negligence in having his car at a standstill upon the highway was a proximate cause of the collision between Herek's car and Piper's car, it being conceded that the injuries for which recovery is sought were the result of the second collision. Piper's contention amounts to this, that even though he was negligent in colliding with the Haffner car, which brought his car to a standstill, obstructing the highway, after it came to a standstill it had the status of a parked car, and for that reason sec. 85.19, Stats., known as the parking statute, applied; that because as a matter of fact the Piper car was disabled it was not within the prohibitions of that section.

On behalf of Piper it is further contended that even if he had been traveling at the rate of ten miles an hour as he might legally do, Herek being unable to see his taillight and traveling at a speed of approximately thirty miles per hour, the collision would have occurred nevertheless, and the case is ruled by *Walker v. Kroger Grocery & Baking Co.* (1934) 214 Wis. 519, 252 N. W. 721, and similar cases.

The contention of Piper upon this point cannot be sustained. The presence of his car upon the highway at the time and place in question was due solely to his negligent driving as the jury found. Piper estimated the time between the first and second collision at from six to seven seconds, Haffner between four and five seconds. It seems to us too plain for argument that Piper's car was obstructing the highway solely by reason of Piper's negligent driving. Whether disabled or not, no time sufficient to permit removal elapsed between the happening of the two collisions. Piper's negligence was clearly an operative cause of the damage sustained in the second collision. Piper's car was under the facts of this case neither parked nor standing on the highway within the meaning of sec. 85.19, Stats. It was there solely by reason of Piper's negligence. For that he is liable. The facts in *Walker v. Kroger Grocery & Baking Co., supra,* have no resemblance to the facts in this case and do not rule it. *Devine v. Bischel* (1934), 215 Wis. 331, 254 N. W. 521.

The conclusion that we have reached upon this branch of the case makes it unnecessary for us to consider other questions raised by the defendant Piper.

The defendant Herek vigorously contends that the evidence does not support the findings of the jury that he was causally negligent. From the testimony it appears without dispute that just immediately prior to the happening of the second collision Herek and the plaintiff were busy watching the highway. Herek testifies that when he struck the heavy cloud of smoke he at once took his foot off the gas and drove around

ten or fifteen feet before striking the Piper car; that during that period he did not have time to make any turn of the car. Both he and plaintiff testified that it was not until after the accident that they knew what it was that they had hit. Herek testified:

"When I got into the cloud of smoke I could not even see as far as the radiator of my car. The smoke that I struck was so thick that I could not see any more than if I were blindfolded."

Herek is fully corroborated by testimony of the plaintiff and there are no circumstances in the case which tend in any way to impeach this evidence. Herek was driving between thirty and thirty-five miles an hour. He had seen no car upon the highway ahead of him and supposed that the highway was clear of obstruction. He testified that he did not have time to apply his brakes after he got into the smoke before the collision occurred. It appears from all the evidence that Herek must have been some two hundred or three hundred feet in the rear of the Piper car when the Piper car ran into the dense smoke. The visibility was such that the Piper car was not within the range of his vision. He was traveling approximately at a rate of forty-five feet per second and from four to seven seconds, more likely seven than four, elapsed, so that there was no opportunity for him to see the Piper car. Herek testified that there was some fog; that prior to the time he ran into the smoke he could see one hundred feet ahead. As already stated, such evidence as there is in the case other than that given by the plaintiff and defendant Herek tends to corroborate their statements. It is considered that this case is ruled with respect to the negligence of Herek by *Johnson v. Prideaux* (1922), 176 Wis. 375, 187 N. W. 207. The defendant Piper testified to facts which if accepted by the jury would have brought him within the rule of *Johnson v. Prideaux, supra,* but there are many circumstances which tend to impeach Piper's evidence. He testified that he could see

one hundred twenty-five feet ahead before entering the smoke cloud. He had been following the Haffner car for some little time while it must have been within the range of his vision. He had neither observed the taillight, the headlight, nor had he noticed the train on the track or the smoke coming from it, although he could see from one hundred twenty-five to one hundred fifty feet ahead. When he hit the smoke he took his foot off the gas and stepped on the brake but traveled only twenty-eight feet when he struck the Haffner car. From this and other inferences which may be drawn with respect to what Piper did are so in conflict with his statements as to make the matter clearly one for the jury.

The conclusion which we have reached upon this branch of the case makes it unnecessary for us to consider other questions raised by counsel for Herek.

*By the Court.*—Upon the appeal of the defendant Piper, the judgment of the plaintiff against him and his insurance carrier is affirmed; upon the motion to review of the defendant Herek the contingent judgment in favor of the defendant Piper and his insurance carrier against Herek is reversed and the cross complaint of the defendant Piper dismissed. The judgment of the defendant Herek against the defendants Piper and his insurance carrier is modified by increasing it to the full amount of damages found by the jury, and, as so modified, is affirmed, Herek to receive his costs against Piper.