TAIT and another, Appellants, vs. PIXLEY and others, Respondents.*

WEYGAND, Respondent, vs. TAIT and wife, Appellants.*

*October 12—November 16, 1948.*

* Motion for rehearing denied, with $25 costs, in one case, on January 18, 1949.

*Walter E. Nitcher* of Evansville, for the appellants.

*Leon Feingold,* attorney, and *George H. Murwin* of counsel, both of Janesville, for the respondents.

WICKHEM, J. On September 17, 1929, Agnes R. Winston conveyed to James W. Ames six and one-half acres including most of the land designated as outlot 11 upon the accompany-

ing plat. The description was by reference to the boundary lines of various other adjoining owners. Outlot 11 and the adjoining land had been in the Winston family since 1855. Agnes Winston died in 1944. This controversy relates to a plot of ground immediately to the north of outlot 5 and indicated by a rectangular marking on the diagram. The disputed property was not included in the probate of the estate of Agnes Winston. On March 26, 1946, plaintiff, Ruth Winston Weygand, executed and delivered to Carroll E. Babcock and Buletta C. Babcock, his wife, a warranty deed to outlot 5 and in April, 1946, Babcock put a new roof on a barn located on the disputed strip north of outlot 5. In May, 1946, Harold L. Tait became interested in buying outlot 11 for purposes of subdivision. He and the owner Ames were unable to determine the location of the southern boundary because most of the owners of lots to the south were using the vacant wood lot. In May and June of 1946, Ames and Tait solicited the abutting owners to contribute to the cost of having a survey made. Babcock indicated that he was not interested. Tait having found out that Babcock's deed was to outlot 5 then consulted with the Winston attorney, Mr. Fred L. Janes, and was informed that Mrs. Weygand owned the land in the disputed area where the barn was located. Mr. Janes prepared a letter to Mrs. Weygand reciting that Dr. Ames had purchased the wood lot from Mrs. Winston and had sold the lot to Mr. Tait; that the disputed area was omitted by mistake leaving a three rod "chunk of land in between the lot sold to Mr. Babcock and the land your mother sold to Dr. Ames." The letter proceeds to state that the small piece of land is of no use to Mrs. Weygand but will help Tait and Ames in completing the deal. The letter further states that he had told Mr. Tait that he thought Mrs. Weygand would be willing to convey this piece of land by quitclaim deed. He accompanied the letter with a small sketch of the land. On July 17, 1946, Tait called on Mrs. Weygand and showed her the letter. He claims that he

made no statements concerning the land and that he simply referred to the letter and sketch. He asked for an abstract but was told that the abstract would cost more than the land was worth. Mrs. Weygand finally signed the quitclaim deed.

Mrs. Weygand testified in support of the charge that the deed was obtained by fraud, that she knew how many feet there were in a rod; that she read Mr. Janes' letter more than once; that she thought that the land involved was a narrow strip fifteen feet wide of no interest to her; that she did not know that the barn was on the premises; that she does not know who told her and was unwilling to testify that Mr. Tait told·her that the land involved was only fifteen feet wide; that she was not hurried by Mr. Tait in reading the letter and that she had plenty of opportunity to read the documents; that she expected no pay from the land and that nothing was said about the barn; that she relied principally upon the letter from Mr. Janes who had been their family lawyer. She put no particular reliance on any statements made to her by Mr. Tait. Two days after Mrs. Weygand's deed to Tait, Ames transferred to Tait by warranty deed all of outlot 11 except the disputed strip and two other strips of no importance here. This was followed by a quitclaim deed from James Ames and wife to Tait to release any interest he might have in the disputed land. Mrs. Weygand testified that since her deed to Babcock described a lot one hundred ninety-eight feet deep, which would exclude the disputed property, she does not consider that she has sold the disputed property to Babcock and she does not feel that she is legally bound to do more than give Babcock first chance to buy the disputed property. Babcock testified that he simply regarded himself entitled to a first chance to purchase the disputed property since he was under the impression that that property went with lot 5; that he was willing to pay Mrs. Weygand some money for the barn and property. The barn is forty or fifty years old without a cement floor and with a badly rotted foundation. The asses-

sor testified that Carroll Babcock was assessed on outlot 5 and upon no part of outlot 11 and that there has been no change in the assessment back as far as 1929. He also testified that outlot 11 had been assessed to Ames and that the tax receipts did not include the disputed property.

On the basis of this record the court found that Ruth Winston Weygand and Carroll Babcock and his successors in title had been in the peaceable, open, notorious, adverse, and undisputed possession of the property for more than twenty years; that the quitclaim deed from Ruth Weygand to Harold Tait was procured by fraud and misrepresentation and that the deed should be canceled.

Upon this record we are of the view that the findings not only fail to satisfy the rule that fraud must be established by clear and satisfactory evidence but are against the great weight and clear preponderance of the evidence. See *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Lepley v. Andersen,* 142 Wis. 668, 125 N. W. 433; *Ball v. Boston,* 153 Wis. 27, 141 N. W. 8. Mrs. Weygand's testimony discloses that she put no reliance upon any statements that Tait might have made concerning the land. In the face of Tait's denial that he made any material statements concerning the land Mrs. Weygand was unwilling to testify positively that Tait told her that the plot was only fifteen feet wide or that the barn was not on it or any other thing material to the cause.

It is a fair inference from the record that this land was omitted by mistake in the deed to Ames; that in consequence it was not inventoried or mentioned in the probate of Mrs. Winston's estate originally; that the family lawyer, Mr. Janes, recognized all this and recommended that the matter be cleared by a quitclaim deed; that Mrs. Weygand in reliance upon Mr. Janes gave a quitclaim deed to Tait. She gave nothing away that in the view of Mr. Janes was not intended to be conveyed to Ames many years ago. When Mrs. Weygand sold to Babcock she sold a plot one hundred ninety-

eight feet deep, which excludes the disputed property, and even Babcock does not claim to own it.

We shall not labor the question of adverse possession further than to suggest that Mrs. Weygand never supposed that she owned the disputed strip, never made any claim to it and never used it in such a way as to constitute open and notorious possession. The Babcock deed did not include the property and we see no way in which Babcock could tack his possession to that of Mrs. Weygand if there was any such possession to connect with. We say no more upon this point because in any case the quitclaim deed put the title in Tait and there has been no adverse possession effective to disturb the title conveyed by this deed. It follows that both judgments must be reversed and causes remanded with directions to enter judgment for plaintiffs in the action to quiet title and for defendants in the action to set aside the deed for fraud.

*By the Court.*—Judgments reversed and causes remanded with directions to enter judgment in accordance with the opinion, appellants to be limited to costs for printing fifty pages of brief.

BROADFOOT, J., took no part.