JOHNSON and another, Plaintiffs-Respondents, v. HEINTZ and another, Defendants and Third-Party Plaintiffs-Appellants: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Third-Party Defendant-Respondent.

*No. 747 (1974). Submitted on briefs May 5, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 815.)

288

292

For the appellants the cause was submitted on the briefs of *Wickhem, Consigny, Andrews, Hemming & Barton, S. C.* of Janesville.

For the respondents the cause was submitted on the brief of *Grimm & Elliott,* attorneys, and *Richard E. Rosenburg,* of counsel, all of Janesville.

HANLEY, J. The following issues are presented on this appeal:

1. May the trial court order concerning the undertaking be reviewed on this appeal?

2. Was it error for the trial court to allow a settlement between plaintiffs and third-party defendants when the direct right of action between them was extinguished by the statute of limitations?

3. If the release was proper, should the defendants be allowed to inform the jury as to the settlement for its possible effect on the testimony of the plaintiff?

4. Did the trial court erroneously deny a directed verdict against the plaintiffs for a failure of their alleged burden of proof of separating the injuries and thus the damages attributable to the two collisions?

5. Did the jury return a verdict fatally defective by incompleteness?

6. Did the jury return a verdict fatally defective by inconsistency?

*Postappeal order review.*

Appellants moved to dismiss the review of the postappeal order concerning the undertaking and the obligation of interest, obviously because of the lack of a motion for cross review within thirty days of the notice of appeal. Sec. 274.12 (4), Stats. Respondents complain that this time period expired only two days after the particular order was entered. Quite conceivably, the order could have been made after the statutory period for notice of review. This unreasonable application of the review and cross appeal procedure is cited as evidence that the statute was not meant to apply to postappeal orders and that review of them is preserved merely by notice to the parties and inclusion of the necessary documents in the appellate record.

■ This court granted the motion to dismiss and noted that an explanation would be given in the decision on the appeal. It is clear that sec. 274.12, Stats., does not apply to the order concerning the use of a deposit in lieu of an undertaking for appeal. The portion of the order which aggrieves the Johnsons is the part limiting the insurer's responsibility for interest on the unpaid judgment. An order entered after judgment concerning other proceedings requires its own separate and noticed appeal. We think the failure to properly appeal that order precludes review.

*State Farm release.*

State Farm was brought into this action by a third-party complaint for contribution. The Johnsons never directly claimed against State Farm or its insured, with the personal injury statute of limitations having run shortly after they commenced suit against Mrs. Heintz. Apparently State Farm and the appellants could not reach an agreement for settlement of the third-party action. State Farm then obtained from the plaintiffs a purported *Pierringer*-type release in exchange for $5,000. Over the objection of the appellants, the trial court dismissed State Farm from the action. No reference to that insurer was made to the jury although State Farm's insured was included in the special verdict questions concerning the second impact.

Appellants complain about what they consider an unjustified extension of the power of a joint tort-feasor to satisfy the portion of a claim attributable to his own negligence without recourse to a trial and without compromising the claimant's rights against other parties. The viability of this power in the comparative negligence field was reaffirmed in *Pierringer v. Hoger* (1963), 21 Wis. 2d 182, 124 N. W. 2d 106. Unlike the situation here, settlement has usually been made between the in-

jured party and one or more of the alleged joint tort-feasors who are defendants in the claimant's action. *See, e.g., Payne v. Bilco Co.* (1972), 54 Wis. 2d 424, 195 N. W. 2d 641. Heintz and American Family cite error in allowing the settlement and the resulting dismissal of State Farm from the action without their consent as the only parties who had a claim against State Farm.

Although a cause of action for contribution reflects the legal theory of the injured claimant, under our common law it is a separate and independent cause of action. *State Farm Mut. Automobile Ins. Co. v. Schara* (1972), 56 Wis. 2d 262, 264, 265, 201 N. W. 2d 758. The basic elements of contribution in negligence situations were established in *Farmers Mut. Automobile Ins. Co. v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 512, 515, 99 N. W. 2d 746:

"1. Both parties must be joint negligent wrongdoers; 2. they must have common liability because of such negligence to the same person; 3. one such party must have borne an unequal proportion of the common burden."

The party asserting the right of contribution has the burden of alleging and proving these necessary conditions. *Id.* at page 519. To facilitate efficiency and eliminate the necessity of additional subsequent litigation, this court has approved the practice of allowing the contribution action to be considered in the same proceeding involving the underlying damage claim despite the contingent nature of this cross action. *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822; *Gies v. Nissen Corp.* (1973), 57 Wis. 2d 371, 372, 204 N. W. 2d 519; *Wagner v. Daye* (1975), 68 Wis. 2d 123, 125, 227 N. W. 2d 688. The common liability necessary for contribution is determined from the point of time of the damage occurrence, *State Farm Mut. Auto. Ins. Co. v. Continental Cas. Co.* (1953), 264 Wis. 493, 563, 59 N. W.

2d 425, irrespective of whether the common liability has been later extinguished as to one of the joint tort-feasors, such as by the failure to fulfill a statutory notice requirement, *Ainsworth v. Berg* (1948), 253 Wis. 438, 34 N. W. 2d 790, 35 N. W. 2d 911. The *Continental Casualty Case* concerned a covenant not to sue entered into by the injured claimant and one of the joint tort-feasors, who unsuccessfully asserted that his "extinguished" common liability prevented a contribution action by his cotortfeasors. As noted in *Continental Casualty Co., supra,* at pages 501, 502:

" 'The fact that one tort-feasor has secured a defense, such as purchasing a covenant not to sue, to a claim by an injured party does not alter the fact that there has been an injury and loss resulting partially from the tortious act of that person. Justice requires that he pay his fair and honest share of the underlying obligation. The later-acquired defense does not alter the basic equities of the situation.' "

Development of the law, of course, has enabled a joint tort-feasor to "buy his peace" and avoid being subject to a contribution action if the agreement meets the requirements of *Pierringer,* so as to satisfy the equities that normally afford the contribution right to the other joint tort-feasors.

Expiration of the statute of limitations within which the claimant must bring his damage action results in an extinguishment of that claim against those potential defendants not then parties to a commenced proceeding. *See: Heifetz v. Johnson* (1973), 61 Wis. 2d 111, 115, 211 N. W. 2d 834. This particular bar does not affect the right of contribution, *Schara, supra,* at 264, 265, unless a completed statute of limitation somehow eliminates responsibility and thus joint liability before the damage incident, *Hartford Fire Ins. Co. v. Osborn Plumbing Co.* (1975), 66 Wis. 2d 454, 461, 225 N. W. 2d 628.

If State Farm had been an initial party defendant in the damage claim of the Johnsons, no objection could be raised to the fact that the plaintiff and a joint tortfeasor defendant were exercising the option approved by *Pierringer*. The settlement of the claim against a defendant under those circumstances requires that he be dismissed from the action. Unfortunate effects from a viewpoint of trial tactics may or may not result to the nonsettling codefendants, but these incidents do not constitute a legally cognizable bar to the release, which is facilitating a policy of reducing litigation and stimulating accord.

Should the untoward effects on trial tactics be recognized as a valid objection when the settlement and dismissal is made to the perceived jeopardy of the party who has the sole right of action against one of the "settling" parties? Although State Farm and the Johnsons make much of the "consideration" that has flowed between them, it is clear that they have erroneously assumed the answer of a legal question that is still in issue, *i.e.*, could the purported release satisfy the claims against State Farm and thus justify its dismissal from the action? The cited factors of "indirect financial exposure" or "assumed risk of a finding of causal negligence against State Farm" which would greatly reduce the nonsettling defendant's exposure are not equivalent to the contribution claim which is the sole basis for State Farm's presence in the lawsuit, irrespective of how they offer an inducement to settle. State Farm is free, as the Johnsons point out, to settle claims which arguably do not constitute valid causes of action, yet such "settlement" does not justify the insurer's release from the independent cause of action for contribution. Respondents claim that the *Pierringer*-form release so protects Mrs. Heintz and her insurer, but the *Pierringer* releases are effective to dismiss the settlor precisely because they satisfy the

underlying claim between the parties while protecting the equities that normally afford contribution to the non-settling defendant.

Plaintiff here failed to bring a claim against State Farm, yet purported to release the insurer from any claims it may have had while ostensibly protecting the contribution right which was the subject of the appellants' cross-action. Appellants note, however, that it was their efforts which procured State Farm's presence. They urge that their control of the cross-action demands that settlements and dismissals from that proceeding be made only with them or at least only with their approval.

Since the contribution action was the only link between State Farm and the underlying claim between the Johnsons and the appellants, there is some justification in recognizing the plaintiffs' lack of a right and power to settle. There is reason also to recognize the tactical interests of the appellants which are jeopardized by the interference with their claim by one with no existing power to compromise an underlying claim in a legally approved manner that has concomitant approved effect of satisfying the contribution action.

We think to find prejudicial error here and order a new trial would be to elevate immaterial form over substance. Appellants suffer no different harm in this defective settlement attempt than they do in a valid settlement situation. Prejudice is seen merely because of the plaintiff's failure to possess a direct claim, and that defect is the whole basis for the appellant's theory. It is clear, however, that the settling parties here could quite easily have undertaken simple procedural steps that would wholly remove the claim of error. Pursuant to negotiations, the Johnsons could have amended their complaint pursuant to sec. 269.44, Stats., to include State Farm as a party defendant. The latter then could have declined to raise the bar of the statute of limitations. It is a well-established proposition in our state law that

the running of the statute of limitations extinguishes the cause of action. This concept is based on the belief that the completion of the period of limitation ends the right as well as the remedy. *Haase v. Sawicki* (1963), 20 Wis. 2d 308, 311, 121 N. W. 2d 876. Yet the objection must be affirmatively raised. *See: Brown v. Parker* (1871), 28 Wis. 21, 28; *Hartford Fire Ins. Co. v. Osborn Plumbing, supra,* at 468. Our new rules of civil procedure recognize the necessity of the interposition of the defense of the statute of limitations. Sec. 802.02 (3), 67 Wis. 2d 617. Although the settling parties here failed to take the proper procedural steps to place themselves in a direct adversary position where the appellants could not raise artificial objections to a settlement and its consequences on their trial tactics, the point remains that such actions could have been taken. The alleged harms suffered by Heintz and American Family, of more complicated litigation and surprise over the possibility of settlement under the existing posture of the proceedings, are difficulties inherent in any approved settlement in one case and arising from their own assumptions on the law in the other; the harms are not due to the procedural deficiency and thus do not demand the sanction of a new trial. It was error to approve the settlement and dismissal while the parties were in a posture not clearly enabling the *Pierringer* release, but the trial court's mistake can hardly in itself be called prejudicial when the defect did not cause cognizable harms to the appellants.

*Evidence and comment on settlement.*

Sec. 904.08 of the new Rules of Evidence, in effect during the period of the second trial, provides in part:

"Evidence of (1) furnishing . . . or (2) accepting . . . , a valuable consideration in compromising . . . a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. . . . This section does not re-

quire exclusion when the evidence is offered *for another purpose,* such as proving bias or prejudice of a witness. . . ." (Emphasis supplied.)

This rule was adopted with modifications from the federal rules of evidence, and the Advisory Committee's Note on the exclusionary rule states:

"The final sentence of the rule serves to point out some limitations upon its applicability. Since the rule excludes *only* when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule. The illustrative situations mentioned in the rule are supported by the authorities. As to proving bias or prejudice of a witness, see Annot. 161 A. L. R. 395, *contra, Fenberg v. Rosenthal,* 348 Ill. App. 510, 109 N. E. 2d. 402 (1952). . . ." (Emphasis supplied.) 59 Wis. 2d, Rp. 93.

Prior to trial, counsel for appellants requested the right to explore the settlement and its implications with the jury. The court, however, only allowed counsel to mention the fact that State Farm Mutual, Myrtle Bruhn and Allstate Insurance Company were originally parties to the lawsuit and that their claims were settled. The court specifically prohibited any mention of the amount of settlement.

We do not think sec. 904.08, Stats., allows testimony concerning details of the compromise settlement with State Farm for the purpose of showing bias or prejudice on behalf of the plaintiff Emaline Johnson. To allow the admission of details including the amount of settlement as an exception to the rule would defeat the purpose of the rule and render it meaningless. The trial court properly excluded any testimony relative to the amount of settlement between State Farm and the plaintiffs. However, the trial court should have allowed appellants to identify which insurance companies were aligned with which parties and to further introduce the fact of settlement by plaintiffs with State Farm.

There is merit to the point, however, that the error in not allowing the topic to be pursued can in no way be prejudicial when there are extrinsic guarantees or evidence to refute the effect of the alleged biasing tendency. *See: Ginocchio v. Davison* (1961), 198 Cal. App. 2d 514, 18 Cal. Rptr. 27. Consistent testimony before and after the existence of the inducement could qualify as such a situation.

Mrs. Johnson testified in both trials that she was painfully injured in the first impact. She also could not tell whether the second impact caused further injury, as she was in continuous pain. She could not tell if the pain increased after the second occurrence. The witness Esther Jordan testified with reference to the second impact that she did not feel any impact to the Heintz car and she was sitting in the back seat.

Under the facts and circumstances of this case prejudicial error is not indicated. American Family was given every opportunity to stress any divergence in Emaline Johnson's testimony. There was ample credible evidence to support the jury's finding that plaintiff's injuries were sustained as a result of the first collision.

*Separation of damages.*

In the decision on the appeal from the first trial, this court noted that Mrs. Gasch and Mrs. Heintz could be considered joint tort-feasors for the second impact on the Heintz vehicle. Conversely, Mrs. Gasch could not be accountable for the injuries arising solely from the first impact. Separate questions for the comparative negligence and damages involved in each impact were mandated. *Johnson v. Heintz, supra,* at 603. Many of the statements as to who were in fact joint tort-feasors there were made in light of the evidence and jury verdict in that proceeding, and of course were not determinative of a situation where the jury was presented with ques-

tions as to the negligence of the parties as appearing from the retrial testimony with proper instructions.

■ The view of the second impact as an instance of joint negligence rather than a successive separate tort reflected the established law on multiple impact collisions. The negligence of an actor in causing a collision can expose him to liability for the further damage proximately caused when additional impacts occur. *Derleder v. Piper* (1941), 239 Wis. 269, 1 N. W. 2d 146; *Wenzel v. Werch* (1949), 256 Wis. 47, 39 N. W. 2d 721; *McFee v. Harker* (1952), 261 Wis. 213, 52 N. W. 2d 381. Additional negligence may be found if the actor had an opportunity to take proper steps to minimize the chances of impacts after the vehicles are immobilized. *See: Felix v. Soderberg* (1932), 207 Wis. 76, 240 N. W. 836; *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. 2d 3, 52 N. W. 2d 134. The negligence of the drivers of successive striking vehicles has been rejected as a superseding cause, *see: Wenzel, supra,* although there are situations where further accidents in proximity to a collision may occur without the negligence of the original actor being a substantial factor or with the negligence of this actor being excused by the extraordinary intervention of the later participants.

■ The factual circumstances presented by this case is a situation where two theories of law combine. When two actors negligently conduct themselves so as to injure another, they become jointly and severally liable to the other if their actions concur in time to directly produce injury or to create an injury-producing situation. *See: Butzow v. Wausau Memorial Hospital* (1971), 51 Wis. 2d 281, 288, 289, 187 N. W. 2d 349. If the acts concurred in time but resulted in distinguishable separate injuries to the same subject, there are separate torts rather than joint liability. Prosser, *Law of Torts*, p. 317, sec. 52 (4th ed. 1971). The situation here sufficiently partakes of a successive tort as a natural and probable

consequence of the original negligence such that the originally negligent actors are wholly liable for the resulting harm by the secondary participants, but additionally their duty and breach concurs in a point of time with that of the successive actor, thus also raising joint liability and contribution. The second impact and therefore its injurious consequences are the product of the concurring negligence. This court indicated as much in the first *Johnson v. Heintz* appeal. The successive tort rationale is alone operative in the malpractice cases where the original injury is aggravated, there being no concurring negligence in the second harm.

It is arguable, therefore, that the first impact of the Heintz vehicle was in some measure due to the negligence of Ruda and Mrs. Bruhn. Their collision resulted in her vehicle blocking the highway under circumstances of limited visibility. Such negligence could also have been found by the jury to thus be a proximate cause of the second impact on the Heintz vehicle, along with the arguable negligence of Mrs. Gasch and perhaps even of Mrs. Fitzmaurice and Mrs. Conway. Their activity may have been slight in its contribution to the impacts, but under the evidence here a special verdict embracing all of the actors could have been requested. *Pierringer, supra*, at 192; *Connar v. West Shore Equipment of Milwaukee, Inc.* (1975), 68 Wis. 2d 42, 227 N. W. 2d 660. Apparently a tactical decision was made to limit the focus of the jury.

Attempts to minimize the complexity of questions in these multiple impact cases is understandable. An example of this complication is the issue of the responsibility for the allocation of the plaintiff's injuries between the two collisions so that a meaningful distribution of the financial burden for damages can be made. A common principle of tort law is the desirability of limiting a negligent defendant's liability to that part of the harm which he has in fact caused, as distinguished

from the harm arising from other causes. Prosser, *supra,* at sec. 52. Thus when separate, successive torts occur, the plaintiff who seeks to charge a later actor with damages due only to the latter's own fault has the responsibility of proof. As stated in Wis J I—Civil 1705:

". . . the burden rests upon each person claiming damages to convince you by the greater weight of the credible evidence to a reasonable certainty, that such person has sustained damages in the respect inquired about and the amount thereof."

When the harm may be attributed to the concurring breaches of duties of two or more actors, a similar rationale has stimulated the development of our comparative negligence special verdict system to facilitate financial apportionment of the resulting expense on the basis of degree of culpability.

Appellants assume but offer no reason for the theory that the plaintiffs here had the obligation of allocating the damages between the two accidents. The appellants correctly stated that the "plaintiff still has the burden of establishing and proving injuries and their causal link to the negligent acts of each defendant it makes a claim against." However, after the effective settlement with State Farm, the plaintiffs were making a claim only against Mrs. Heintz and her insurer. *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 6, 114 N. W. 2d 105, reiterated that a plaintiff may recover his total damages from any defendant tort-feasor. This is so even if that defendant raises the third-party suit for contribution. The Johnsons here met their burden by presenting adequate evidence that the injuries of Mrs. Johnson arose from the multiple impacts and that Mrs. Heintz was negligently responsible for both of them. They ran the risk that Mrs. Heintz would not be found negligent for one of the impacts or that Mrs. Johnson would somehow be found negligent in only one circumstance, in which case

the verdict would be inadequate to enable judgment if there were no allocation between impacts. Even then their failure to prove that item could be cured if proof were adduced by the defendant liable for each impact who seeks contribution from different actors for each of the impacts. As here, that defendant raises the necessity of allocation because of his contribution action, and in this case there is no reason why he should not carry the burden of adducing facts on the issue. The plaintiffs have pledged to satisfy the portion of negligence (and by implication the amount of damages) attributable to State Farm's insured, but the liability of that insured existed as an issue at that point only because of the appellant's claim. The original *Johnson v. Heintz Case* asserted that an allocation of damages as to the two impacts was necessary, but the opinion never stated that the responsibility for this allocation was on the plaintiff.

Appellants request that the damages be equally allocated between the two impacts as a matter of law because of the difficulty of proof. Some authorities have suggested that in multiple impact cases the burden of allocation always should shift to the defendants upon proof of injury from the total occurrence, or that the plaintiff's burden be relaxed. Prosser, *supra*, at 319. The suggestion of appellants is in the same vein. Initially there should be some showing that the damages are indeed impossible of allocation before such rules could even be considered. There was no expert testimony here by engineers capable of accident reconstruction that would support the contention that the injuries of Mrs. Johnson were equally as likely to have occurred in either impact. To the contrary, there was compelling evidence, reflected in the jury verdict to be discussed, that would support a finding that the damages arose wholly in the first impact.

*Incomplete and inconsistent verdict.*

Incompleteness of the verdict is cited as the jury made no answer to questions inquiring about the damages sustained by Mrs. Johnson in the second impact. Inconsistency is urged in two respects. Assuming that the lack of an answer on the damage question implies that no damages were in fact sustained, a contradiction is posed by the jury's affirmative answer to the question on whether the negligence of Mrs. Heintz at or just before the second collision was a cause of injury. Inconsistency is also cited in the finding that Mrs. Gasch's negligence before the second collision was contrarily not a cause of injury.

Rather well-established rules exist for dealing with inconsistent verdicts. There has also been some guidance on the problem posed by an incomplete verdict. Obviously the issue is aggravated when both problems occur in a verdict. Inconsistency is the most serious problem here, and the incomplete portion becomes a problem only in relation to that more fundamental deficiency. A scrutiny of the appropriate rules in light of the facts and verdict form here does reveal a solution that does no violence to the findings made by the jury. This court is not unwilling to construe a verdict as a whole. *Flies v. Fox Bros. Buick Co.* (1928), 196 Wis. 196, 218 N. W. 855.

In the assertion of contradiction between the findings that the second impact negligence of Mrs. Heintz was causal of injury while that of Mrs. Gasch was not, appellants contend that this situation is controlled by rule (3) of *Statz v. Pohl* (1954), 266 Wis. 23, 32a, 62 N. W. 2d 556, a leading case on inconsistent verdicts:

" '(3) If but one element of negligence is submitted to the jury and the court can find as a matter of law that the party inquired about in the question is guilty of causal negligence and the jury finds that he is not, and in answer to the question on comparative negligence

attributes to him some degree of causal negligence, the court should change the answer to the question which inquires as to his conduct from "No" to "Yes" and permit the jury's comparison to stand with judgment accordingly.' "

Since the jury in the second collision comparison question apportioned no negligence to Mrs. Gasch, consistent with their earlier finding (which had two dissents), rule (3) on its face is inapplicable. It is rather cited by analogy for the incurable inconsistency that would exist between the apportionment and the causal negligence question when the answer to the latter is reversed, which appellant claims the trial court should have done as a matter of law. This last contention is based on the positive findings that Mrs. Heintz' negligence caused injury in the second impact. Since her vehicle was immobile, injury was caused by an active force upon it. The active force, Mrs. Gasch, had been found negligent. Causality is compellingly shown. Therefore the answer cannot stand and the apportionment of negligence is faulty, the latter being a matter which cannot be corrected by the court.

These inconsistencies, however, create a defect that is not material in light of the lack of answer to the question of damages arising in the second incident. It has been stated that the failure of the jury to answer questions submitted to them does not render the verdict insufficient to sustain the judgment unless the answer to such questions in a light most favorable to the party suffering judgment would necessarily render the judgment erroneous. *Bush v. Maxwell* (1891), 79 Wis. 114, 48 N. W. 250. It was the defendants' burden to propose facts for the allocation of the damages to the two impacts. The lack of answer to the question, if it be construed to mean that injury did occur in the second impact (thus consistent with the causality questions) but that the amount of such damages was not determinable to a

reasonable degree of certainty, would be prejudicial error to the plaintiff who has offered evidence sufficient for an answer to the question of total damages suffered in the total occurrence. The most favorable answer to the question for the defendant is that no injury in fact occurred in the second impact.

Taking that answer, inconsistency thus exists between it and the affirmative answers that negligence "caused injury" in the second collision. As noted in *Statz v. Pohl, supra,* at page 28:

". . . If we were to hold that there is no inconsistency we should be required to say that one or the other of the findings is surplusage or immaterial. The question would then be presented: Which? It is impossible to determine from the record or from any other source that the jury meant what it said in answer to one of the questions and that the answer to the other was thrown in only casually and without regard to the form of the questions and in disregard of the court's instructions."

On the state of the record, a ruling could not be made either way. The rule of *Statz* that fatally inconsistent verdicts require retrial has been modified, however, in *Erdmann v. Wolfe* (1960), 9 Wis. 2d 307, 101 N. W. 2d 44. *See also: Jahnke v. Smith* (1973), 56 Wis. 2d 642, 203 N. W. 2d 67. *Erdmann* held that the plaintiff may accept a judgment which is supported by a verdict in which the inconsistencies are resolved against him. Thus in this case the verdict would be read, as acceptable to the plaintiff, that definite injuries had been proven to a reasonable degree of certainty as having been caused in only the first collision and that no compensable injury had been proven as resulting from the second impact. The evidence in the record supports this result.

*Question of remittitur.*

Appellants requested the trial court to invoke the power created in *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393. If it appears that an

excessive award has been returned by the jury, the trial court may grant the plaintiff the option of either a new trial or an award in a more appropriate amount.

In *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587, it was noted that the trial court must review the evidence in a light most favorable to the claimed excessive verdict. Citing *Makowski v. Ehlenbach* (1960), 11 Wis. 2d 38, 43, 103 N. W. 2d 907, this court further stated:

". . . In a case where it is clear to the court that the amount awarded must necessarily reflect an allowance for the effects of injury not sufficiently proved or reflect a rate of compensation which is beyond reason, the court will declare the damages excessive. Where the question is a close one, it should be resolved in favor of the verdict."

The decision finding no excess, just as the decision to the contrary, will be reversed only if an abuse of discretion is found. *Neider, supra,* at 563.

The first trial in this case occurred in January, 1972. Awards of $30,000 for Mrs. Johnson and $5,000 for Mr. Johnson were returned. A new trial was granted, among other reasons, for the failure to provide expert medical testimony to link the 1964 accident with a subsequent buckling and reinjury of her damaged knee in 1969. Although this court found those damages "not excessive," *Johnson v. Heintz, supra,* at 595, the consideration of an improper factor required a new trial. Damages of $65,000 for Mrs. Johnson and $10,000 for her husband were returned in this second trial in September, 1974.

Counsel for the plaintiffs requested damages of $92,000 and $25,000. Wage loss from the accident to the reinjury of $8,400 was shown. Loss of earnings from then to the second trial was submitted as an additional $12,600. Considering thirteen future working years till age sixty-five, loss of future earning capacity of $39,000 was requested. Pain and suffering damages for the ten years

till the second trial and for the nineteen years of life expectancy were set at $30,000 in his request. The defendants accepted the proven wage loss, disputing the purported loss of past and future earning capacity and minimizing the pain suffered. Awards of $20,400 and $2,000 were suggested by them as appropriate for the Johnsons.

Excessiveness is claimed mainly on the basis of one view of conflicting testimony. Mrs. Johnson is asserted as claiming uninterrupted pain since the accident, while there were medical records indicating diminishing pain and recovery until the reinjury to the knee which suffered the primary damage in the automobile accident. Her testimony, however, did acknowledge periods of recovery. Statements that the pain she felt at the time of trial was as bad as the pain felt in earlier years does not conclusively admit of the absolute and highly impeachable interpretation urged by the defendants. Similarly, the treating physician had acknowledged in one adverse examination that the reinjury was unrelated to the earlier accident; but he also answered a hypothetical question embracing the circumstances of Mrs. Johnson and the subsequent buckling to affirm that such reinjury was attributable to a reasonable degree of medical certainty to the pain arising from the automobile accident injury. He indicated that he did expect some muscle atrophy from the pain, but in fact found strong muscles indicative of much use and thus no restrictive pain. Contrarily, however, he also acknowledged that certain leg exercises, done in a prescribed manner so as not to involve pain, could account for the development. There was significant evidence that the exercises were thoroughly performed. Stress is laid on the weak evidence of loss of earning capacity claimed for the future and for the time until the second trial. Admittedly, she had worked at various jobs after both the accident and reinjury.

Mrs. Johnson testified that her ability to work, with the pain in two limbs, had diminished and that she had difficulty obtaining outside employment or even doing her own housework. There was credible evidence that she was in pain and her ability to work was impaired to some degree. The trial court observed that it also believed that the plaintiff "suffered a lot of pain and she's going to suffer a lot of pain in the future."

As this court observed in *Lipinski v. Pakulski* (1974), 62 Wis. 2d 628, 635, 215 N. W. 2d 468:

". . . [S]pecial weight is given the jury's findings where, as here, they have had the specific approval of the trial court."

Here the trial court thoroughly reviewed the damage issue and concluded that the compensable effects of the claimed injury were sufficiently proved to the extent of the award returned. The finding that the jury award was not excessive here and that a *Powers* option is thus not warranted can hardly be classified on this appeal as an abuse of discretion.

*New trial.*

Three grounds are alleged for a new trial in the interests of justice: the excessive damages, the imprecise evidence on damage allocation, and the settlement between State Farm and the plaintiffs. The first ground is unfounded on the record, the second basis is a deficiency chargeable to the defendants, and the third item consists of detriment to the defendants that is of no different character than that incurred in any settlement with only one joint tort-feasor rather than harm because of the procedurally incorrect manner of its enactment.

A review of the evidence, moreover, leads to the conclusion that no different result would be reached on a

retrial. Reference is made by the appellants to contradictions between Mrs. Johnson's testimony in the two trials on the degree of injury attributable to each impact. Her testimony in both trials was not precise, as is understandable in the case of one who must subsequently reconstruct the events surrounding an accident years after its occurrence. The minor variation, really of an ambiguous nature rather than of positive contradiction, is minimal. Its effect is further minimized by the testimony of two other occupants of the Heintz vehicle that the second impact was extremely slight. Mrs. Bruhn, although sitting in her vehicle when it was pushed back to the Heintz automobile after being struck by the car driven by Mrs. Gasch, testified to not recalling that secondary impact following the Gasch collision. Credibility questions are inherent throughout the record, but the most compelling view of the evidence, accepted by the jury, was reflected in the verdict here.

*By the Court.*—Judgment and order affirmed.