The ESTATE OF Frank P. RILLE, by its Personal
Representative, Susan Rille, and Susan Rille,
Plaintiffs-Respondents,

Tommy THOMPSON, Secretary,
Department of Health & Human Services,
Involuntary-Plaintiff-Respondent,

v.

PHYSICIANS INSURANCE COMPANY,
Medical College of Wisconsin Affiliated Hospitals,
Inc., and Sheila Galbraith, M.D.,
Defendants-Third-Party Plaintiffs-Appellants,

v.

ALBERTSON'S, INC., Osco Drug, Inc.,
and ABC Insurance Company,
Third-Party Defendants-Respondents.

Supreme Court

*No. 2005AP1407. Oral argument December 12, 2006.
—Decided March 23, 2007.*

1

2007 WI 36

(Also reported in 728 N.W.2d 693.)

4

For the defendants-third-party plaintiffs-appellants there were briefs by *Michael B. Van Sicklen, Naikang Tsao,* and *Foley & Lardner LLP,* Madison; *Steven P. Sager, James Samuelsen,* and *Sager, Colwin, Samuelsen & Associates, S.C.,* Fond du Lac, and oral argument by *Michael B. Van Sicklen.*

For the third-party defendants-respondents there was a brief by *William J. Katt, Mark D. Malloy,* and *Leib & Katt, S.C.,* Milwaukee, and oral argument by *William J. Katt.*

For the plaintiffs-respondents there was a brief by *Edward E. Robinson* and *Cannon & Dunphy, S.C.,* Brookfield, and oral argument by *Brett A. Eckstein.*

An amicus curiae brief was filed by *Linda V. Meagher* and *Habush Habush & Rottier, S.C.,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2003–04).[1] The circuit court for Waukesha County, Mark S. Gempeler, Judge, granted the motion of the third-party defendants, Albertson's, Inc. and Osco Drug, Inc., (collectively referred to as Osco Drug),[2] to dismiss the third-party complaint brought by the third-party plaintiffs,

---

[1] All references to the Wisconsin Statutes are to the 2003–2004 version unless otherwise noted.

[2] Albertson's, Inc. is the parent company of Osco Drug.

Physicians Insurance Company of Wisconsin, Inc., Medical College of Wisconsin Affiliated Hospitals, Inc., and Sheila Galbraith, M.D. (collectively referred to as Dr. Galbraith).

¶ 2. Dr. Galbraith's third party complaint sought contribution or indemnity from Osco Drug if Dr. Galbraith were found liable in the underlying medical malpractice lawsuit brought by the Estate of Frank P. Rille by Susan Rille, its Personal representative, and Susan Rille (collectively referred to as Rille) against Dr. Galbraith and Osco Drug.[3]

¶ 3. The circuit court granted Osco Drug's motion to dismiss Dr. Galbraith's third party complaint on the basis of a prior proceeding in the underlying medical malpractice lawsuit. Osco Drug had petitioned the circuit court in the underlying medical malpractice lawsuit for summary judgment when no party in response to the scheduling order submitted the names of expert witnesses or reports critical of the conduct of Osco Drug.

¶ 4. Rille did not oppose Osco Drug's motion for summary judgment. Dr. Galbraith did not oppose the motion for summary judgment as it related to Rille's underlying medical malpractice lawsuit, but Dr. Galbraith filed a brief and affidavits and appeared at the hearing on the motion. Dr. Galbraith attempted to preserve her contribution claim against Osco Drug, asking the circuit court to rule that the summary judgment was not on the merits and would not affect her rights to contribution or indemnity.

¶ 5. The circuit court granted Osco Drug's motion for summary judgment on the merits. The parties

---

[3] Dr. Galbraith's supervising physician, Thomas J. Russell, M.D., was also sued but was dismissed as a defendant.

9

vigorously debated the wording of the summary judgment order relating to Dr. Galbraith's rights against Osco Drug. The circuit court adopted Dr. Galbraith's phrasing of the summary judgment order, which stated that "this order is no way intended to affect the rights of other parties to pursue claims under appropriate statutory and/or case law."

¶ 6. After summary judgment was granted (with the language quoted above) and after further discovery proceedings, Dr. Galbraith filed a third-party complaint against Osco Drug for contribution, which included allegations of Osco Drug's negligence that were substantially the same as those contained in Rille's complaint. Osco Drug moved to dismiss the third-party complaint against it on the ground of issue preclusion, arguing that Osco Drug's liability was preclusively determined in the earlier summary judgment order. The circuit court granted Osco Drug's motion to dismiss, and Dr. Galbraith appealed.

¶ 7. The issue presented is whether the circuit court erred in holding that issue preclusion barred the third-party claim of Dr. Galbraith for contribution against Osco Drug.

¶ 8. Addressing this issue requires the court to answer two questions: Was the issue of Osco Drug's negligence actually litigated and determined in the summary judgment motion so that the doctrine of issue preclusion applies? If the doctrine of issue preclusion applies, did the circuit court erroneously exercise its discretion when it applied issue preclusion in the present case?

¶ 9. For the reasons set forth, we hold that the issue of Osco Drug's liability was actually litigated and determined by summary judgment and that the circuit court did not preserve Dr. Galbraith's claim for contri-

bution in its order on summary judgment. We further hold that the circuit court did not erroneously exercise its discretion when it ruled that application of issue preclusion was fundamentally fair. To preserve her contribution claim against Osco Drug successfully against a challenge on the ground of issue preclusion, Dr. Galbraith should have appeared and objected on the merits to Osco Drug's motion for summary judgment, thereby ensuring that there would be no possibility of inconsistent fact-finding on any issue central to Rille's claim and her own claim. Filing a brief and arguing that her claim for contribution should be preserved for a later date was not adequate, without any justification, to avoid issue preclusion under *Precision Erecting, Inc. v. M&I Marshall & Ilsley Bank,* 224 Wis. 2d 288, 592 N.W.2d 5 (1998).

¶ 10. Accordingly, we affirm the order of the circuit court dismissing Dr. Galbraith's third-party complaint for contribution against Osco Drug.

I

¶ 11. Although the parties disagree about the proper legal inferences and legal conclusions to draw from the facts, the facts relevant to this appeal are not in dispute.

¶ 12. This appeal stems from a medical malpractice action. On March 10, 2003, Frank Rille filed a medical malpractice action against Dr. Galbraith and Osco Drug. An amended complaint was filed on August 1, 2003, following the death of Frank Rille, substituting as plaintiffs the Estate of Frank P. Rille, by its personal representative Susan Rille, and Susan Rille, in her personal capacity.

¶ 13. The medical malpractice complaint alleges that while treating Frank Rille's psoriasis condition, Dr. Sheila Galbraith issued a prescription for the drug

11

methotrexate in a dosage higher than Galbraith's supervising physician instructed. The medication was supposed to be prescribed at the rate of 2.5 mg administered three times a week (total dosage of 7.5 mg per week). Instead the prescription, as written, directed the patient to take 7.5 mg per day (total dosage of 52.5 mg per week). An Osco Drug pharmacy filled the prescription as written, without questioning the dosage. Frank Rille took the drug as prescribed for several days. He became severely ill and required extended medical care.

¶ 14. Dr. Galbraith did not initially file a claim in Rille's action against her co-defendant, Osco Drug, and need not have done so. Contribution claims may, however, be brought in the original tort action.[4] "To facilitate efficiency and eliminate the necessity of additional subsequent litigation, this court has approved the practice of allowing the contribution action to be considered in the same proceeding involving the underlying damage claim despite the contingent nature of this cross action."[5]

¶ 15. Contribution claims are not mandatory in the initial tort action.[6] "While claims for contribution

---

[4] The basic elements of a contribution claim in negligence actions are: "1. Both parties must be joint negligent wrongdoers; 2. they must have common liability because of such negligence to the same person; 3. one such party must have borne an unequal proportion of the common burden." *Johnson v. Heintz,* 73 Wis. 2d 286, 295, 243 N.W.2d 815 (1976) (quoting *Farmers Mut. Auto. Ins. Co. v. Milwaukee Auto. Ins. Co.,* 8 Wis. 2d 512, 515, 99 N.W.2d 746 (1959)).

[5] *Johnson,* 73 Wis. 2d at 295.

[6] *Marten Transport, Ltd. v. Rural Mut. Ins. Co.,* 198 Wis. 2d 738, 741, 543 N.W.2d 541 (Ct. App. 1995) (citing *Weina v. Atlantic Mut. Ins. Co.,* 177 Wis. 2d 341, 346, 501 N.W.2d 465 (Ct. App. 1993)).

are commonly pled in the underlying personal injury action, there is no requirement that they be pled at that time."[7] A party instead may wait until after he or she is adjudged liable before filing a contribution claim.[8]

¶ 16. Nevertheless, in her answer to both the initial complaint and the amended complaint, Dr. Galbraith references her contribution claim against Osco Drug. Specifically, in the "wherefore" clause of her answer, Dr. Galbraith asserted the following:

> In the event this defendant is found jointly liable with any other defendant, then, and in that event, this defendant will be entitled to contribution and/or indemnity according to the law.

¶ 17. Dr. Galbraith's contribution claim was thus well known to all parties and the circuit court.

¶ 18. Under the circuit court's original scheduling order, Rille was required to disclose experts by August 1, 2003, and the defendants were required to disclose their experts by November 1, 2003.

¶ 19. On December 1, 2003, Osco Drug filed a motion for summary judgment. It alleged that no party has presented any expert witness or report establishing an inference of Osco Drug's negligence or a causal connection between any action or inaction of Osco Drug

---

[7] *Weina v. Atlantic Mut. Ins. Co.*, 177 Wis. 2d 341, 346, 501 N.W.2d 465 (Ct. App. 1993).

[8] Wisconsin Stat. § 893.92 establishes the statute of limitations for a contribution action: "An action for contribution based on tort, if the right of contribution does not arise out of a prior judgment allocating the comparative negligence between the parties, shall be commenced within one year after the cause of action accrues or be barred."

and the damages sought.[9] Wisconsin courts have consistently maintained that medical malpractice negligence claims such as Rille's must be supported by expert testimony.

¶ 20. Rille did not oppose the motion for summary judgment. At the hearing, counsel for Rille explained:

> We do not oppose Osco's motion for summary judgment based, in part, on the testimony that has come out from Dr. Galbraith at her deposition, number one. Number two, as a matter of strategy obviously the Court is aware of the competency and capabilities and trial prowess of both counsel seated here.

> We have a clear claim in this case against Dr. Galbraith, the resident, who admitted that she wrote out an incorrect prescription; that the prescription was filled exactly as she wrote it out. Our client took it as written out, as prescribed, and that led to why we are here today. So we, for that reason, have decided not to pursue a claim against Osco.

> They have moved for summary judgment. We do not oppose that motion at this time, not because we couldn't hypothetically go out and try to find some expert. We have just decided not to do that.

¶ 21. Dr. Galbraith received notice of the summary judgment motion. She did not oppose the motion. She did, however, file a brief and affidavits in response to Osco Drug's summary judgment motion. Dr. Galbraith explained her intention not to oppose Osco Drug's motion for summary judgment. She stated that

---

[9] Rille had alleged in his Amended Complaint that Osco Drug "was negligent in dispensing a dosage of Methotrexate . . . in a quantity that its agents, servants or employees, knew or should [have] known exceeded safe and recommended levels, or was otherwise negligent."

the summary judgment hearing was not the right time for her to pursue a contribution claim. She concluded that she could wait to pursue her contribution claim: "So I am able to kind of sit back, if you will, and see what [the plaintiff] decides to do. . . . It's really that simple, and I don't think there is anything more to it than that. We have the right to pursue this if we choose to. We may or may not take discovery in this case about Osco."[10]

¶ 22. Dr. Galbraith's brief requested that, "in fairness to [the defendants]," the circuit court on the summary judgment motion should "specifically reference: 1. That such order is not determinative of any claims of those defendants, Physicians Insurance Company of Wisconsin, Inc., Medical College of Wisconsin Affiliated Hospitals, Inc. and Sheila Galbraith, M.D., and 2. That such claims are preserved."

¶ 23. The circuit court heard arguments on Osco Drug's motion for summary judgment on February 19, 2004. The regularly assigned judge, Hon. Mark S. Gempeler, was unavailable that day, so Reserve Judge John Fiorenza presided over the hearing.

¶ 24. Significant discussion ensued at the hearing about the impact of a summary judgment in favor of Osco Drug on Dr. Galbraith's contribution claim. At the hearing, Dr. Galbraith reiterated that even though she was not opposing the motion, she wanted to reserve the right to pursue a claim for contribution against Osco

---

[10] In her brief, Dr. Galbraith explained she had "a right to a potential cross-claim and/or a claim for contribution against Osco but did not want to mislead the court or counsel in indicating that any active claim was made at this time on behalf of Dr. Galbraith that Osco's actions or omissions were violative of some standard of care . . . ."

15

Drug. Dr. Galbraith requested that summary judgment be granted "without prejudice."

¶ 25. Osco Drug's counsel predicted at the hearing that if summary judgment were granted and Dr. Galbraith brought a contribution claim against Osco Drug, the claim would be challenged under the doctrine of issue preclusion, citing *Precision Erecting v. M & I Marshall & Ilsley Bank, G.A.P., Inc.*, 224 Wis. 2d 288, 592 N.W.2d 5 (Ct. App. 1998), and a court would bar the claim.

¶ 26. The circuit court (Judge Fiorenza) granted summary judgment in favor of Osco Drug on the merits and dismissed Rille's claims against Osco Drug with prejudice. During the hearing, the circuit court explained that its decision was not "foreclosing whatever arguments [the parties] make in the future and whatever potential claims that are out there against anyone . . . ." The circuit court stated that the validity of any action for contribution was not before it and that the validity of any action for contribution would have to be determined according to the statutes and case law when a contribution action was filed. The circuit court explained its position as follows:

> The case here, the summary judgment motion is very clear and its deals with an issue that is in the case, and that is the question of negligence claimed by the plaintiff against Osco. There is [sic] no other claims against Osco in the case. There are no formalized claims against Osco in this case and, therefore, if any party has another claim for contribution, or what have you, whatever claim they may have but has not been brought forth in this case the Court can't look into the future and say, well, there's possible claims out there and so I shouldn't rule on the case that's before me . . . .
>
> If someone would bring an action for contribution against Osco, that would have to be determined if the

statute in question would allow that, if the case law would allow that. . . . I have not considered these. Absolutely have not considered these facts because they're not before me . . . . I cannot restrict Osco's position of saying you should have brought it, and that certainly is their right to object at that time to any further contribution action; nor can I at this time tell [Dr. Galbraith] that you can't bring a contribution action. That issue just isn't before me at this time and before the Court, and therefore I actually have no authority to rule on such a matter that is not before me in this decision.

¶ 27. Osco Drug and Galbraith disagreed about the language that should be incorporated in the circuit court order granting Osco Drug summary judgment to reflect the decision of the circuit court. Osco Drug submitted a proposed order to Judge Gempeler, who had resumed responsibility over the case, declaring only the dismissal with prejudice of Rille's claims against Osco Drug.

¶ 28. Dr. Galbraith submitted an alternative proposed order, which added the following words: "this order is no way intended to affect the rights of other parties to pursue claims under appropriate statutory and/or case law." Dr. Galbraith explained that, in her opinion, this language was more consistent with the decision of Judge Fiorenza.

¶ 29. Osco Drug strenuously opposed Dr. Galbraith's version of the proposed order. Osco Drug wrote the circuit court insisting that Judge Fiorenza did not carve out and preserve Dr. Galbraith's contribution claim but merely refused to rule on issue preclusion. The letter stated:

The only argument at the motion was whether the dismissal should be on the merits and with prejudice as it relates to Osco, Inc. Judge Fiorenza gave a very clear decision, and in fact I have ordered a copy of that

17

transcript, because I suspected that [Dr. Galbraith's counsel] would attempt to do something exactly like he has done [with the proposed order]. He is still trying to preserve a claim that we do not believe that he has. Judge Fiorenza made it very clear that he could not make an anticipatory ruling and that the only motion before him was Osco's motion for summary judgment. Summary judgment on that motion was clearly granted to Osco and it was granted on the merits and with prejudice. . . . Please disregard [Dr. Galbraith's] order and sign the order that we have previously submitted.

¶ 30. In reply, Dr. Galbraith wrote the circuit court challenging Osco Drug's assertions, stating in relevant part:

[Osco, Inc.'s counsel's] comments and implications I believe are . . . inappropriate.

I respectfully suggest that perhaps Judge Fiorenza, who heard the entire argument, might want to sign the order. Regardless of who signs the order, I certainly concur with the review of the transcript prior to the order being signed, especially the last several minutes of the hearing when the Judge made his decision.

¶ 31. The circuit court (Judge Gempeler) signed Dr. Galbraith's (not Osco Drug's) proposed order on March 8, 2004.

¶ 32. The circuit court subsequently entered an order on September 30, 2004 that amended the original scheduling order. Rille was to name experts and file expert reports by November 6, 2004.[11] The parties were given until December 1, 2004, to make any amendments to the pleadings, including adding parties. Dr. Galbraith was to name experts and file expert reports by February 1, 2005.

---

[11] By stipulation of Rille and Dr. Galbraith.

18

¶ 33. Dr. Galbraith proceeded to conduct discovery against Osco Drug, including taking depositions of Osco Drug employees in Phoenix, AZ. Dr. Galbraith also secured experts to testify about Osco Drug's negligence in filling Frank Rille's prescription as written.

¶ 34. In November 2004, Dr. Galbraith filed a third-party complaint against Osco Drug seeking contribution and/or indemnity. Dr. Galbraith also named experts and provided expert reports allegedly establishing the negligent conduct of Osco Drug pharmacists.

¶ 35. In January 2005, Osco Drug filed a motion to dismiss Dr. Galbraith's third-party complaint against it on the ground of issue preclusion. After a hearing on the matter, on April 15, 2005, the circuit court (Judge Gempeler) granted Osco Drug's motion to dismiss, holding that issue preclusion barred Dr. Galbraith's re-litigating Osco Drug's negligence. Dr. Galbraith sought reconsideration of the decision, which was denied. Dr. Galbraith then appealed the order dismissing her third-party complaint to the court of appeals, and the court of appeals certified the case.[12]

II

¶ 36. To determine whether the doctrine of issue preclusion bars Dr. Gallagher's third party complaint against Osco Drug, we apply a two-step analysis described in the case law: (1) whether issue preclusion can, as a matter of law, be applied, and if so, (2) whether the application of issue preclusion would be fundamentally fair.

___

[12] Rille's claims against Dr. Galbraith have been stayed pending this appeal.

¶ 37. In the first step, a circuit court must determine whether the issue or fact was actually litigated and determined in the prior proceeding by a valid judgment in a previous action and whether the determination was essential to the judgment.[13] The determination under the first step is a question of law, which this court decides on appeal independently of the circuit court but benefiting from its analysis.[14] Issue preclusion can be applied only if this first step is satisfied.

¶ 38. In the second step, a circuit court must determine whether applying issue preclusion comports with principles of fundamental fairness.[15] A circuit court's ultimate decision on fundamental fairness is an exercise of discretion and is reviewed as such.[16] The case law has set forth five factors, which are not exclusive or dispositive, to aid a circuit court in determining whether application of issue preclusion is fundamentally fair. Several of these factors present questions

---

[13] *Town of Delafield v. Winkelman*, 2004 WI 17, ¶ 34, 269 Wis. 2d 109, 675 N.W.2d 470. *See also* Restatement (Second) Judgments, § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

[14] *Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 224, 594 N.W.2d 370 (1999); *Gloss v. Legend Lake Property Owners Ass'n, Inc.*, 2003 WI App 162, ¶ 13, 266 Wis. 2d 694, 667 N.W.2d 378.

[15] *Paige K.B.*, 226 Wis. 2d at 225.

[16] *Mrozek v. Intra Fin. Corp.*, 2005 WI 73, ¶ 15, 281 Wis. 2d 448, 699 N.W.2d 54 ("[W]hether the circuit court properly applied, or refused to apply, issue preclusion in an individual case is a discretionary decision.").

20

of law.[17] Others are within the circuit court's discretion.[18]

¶ 39. We will affirm a circuit court's exercise of discretion if the circuit court applies the proper standard of law and, using a demonstrated rational process, reaches a conclusion that a reasonable court could reach.[19] If a circuit court exercises its discretion upon an error of law, the circuit court has erroneously exercised its discretion.[20] In sum, we review the circuit court's final decision on whether to apply the doctrine of issue preclusion under the exercise of discretion standard, deciding the questions of law embedded in the exercise of discretion independently, benefiting from the analysis of the circuit court.

### III

¶ 40. We address the first step in the analysis of issue preclusion, that is, whether the issue of Osco Drug's negligence was actually litigated and determined in the summary judgment proceeding by a valid judgment and whether the determination of the issue was essential to the prior judgment.

¶ 41. Ordinarily issue preclusion arises in a subsequent lawsuit. Dr. Galbraith's contribution claim is brought within the four corners of the same lawsuit. The court of appeals has clearly held that the doctrine

---

[17] *Paige K.B.,* 226 Wis. 2d at 225.

[18] *Paige K.B.,* 226 Wis. 2d at 225.

[19] *Johnson v. Allis Chambers Corp.,* 162 Wis. 2d 261, 273, 470 N.W.2d 859 (1991).

[20] *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733 (1968).

of issue preclusion applies when one party seeks to bar another from relitigating a prior adjudication in the same lawsuit.[21]

¶ 42. The parties disagree whether the issue of Osco Drug's negligence was actually litigated and determined when the circuit court granted Osco Drug's motion for summary judgment.

¶ 43. Dr. Galbraith insists that because Rille did not oppose Osco Drug's motion for summary judgment, the summary judgment was in effect a voluntary stipulated dismissal of Osco Drug from Rille's lawsuit. Dr. Galbraith also argues that Osco Drug was dismissed from the case on a procedural technicality, that is, on the ground that Rille failed to secure the expert testimony necessary to prove the negligence claim.[22] Dr. Galbraith further argues that the summary judgment can be characterized as a default judgment, sanctioning Rille's failure to prosecute the case by failing to secure an expert witness to support the claim that Osco Drug was negligent.

¶ 44. According to Dr. Galbraith, whether the circuit court's actions are viewed as a stipulated dismissal,

[21] *Precision Erecting, Inc. v. M&I Marshall & Ilsley Bank,* 224 Wis. 2d 288, 302, 592 N.W.2d 5 (Ct. App. 1998) ("[T]here is nothing in the rationale behind the rule to prevent its application within the four corners of the same lawsuit.").

[22] Expert testimony is required on "those matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind and which require special learning, study or experience." *Payne v. Milwaukee Sanitarium Found., Inc.,* 81 Wis. 2d 264, 276, 260 N.W.2d 386 (1977).

Not all cases alleging negligence of licensed professionals require expert testimony: "[T]he necessity for expert testimony depends upon the type of negligent acts involved." *Id.* at 275–76.

as a summary judgment on a procedural technicality, or as a default judgment, the issue of Osco Drug's negligence was not actually litigated and determined.

¶ 45. Osco Drug and Rille disagree with Dr. Galbraith's characterization of the circuit court's order. They emphasize that the summary judgment motion was argued and granted as a summary judgment motion. Osco Drug moved for summary judgment under Wis. Stat. § 802.08, arguing in its briefs and at the hearing that there was no triable issue of fact regarding Osco Drug's negligence. Dr. Galbraith responded, treating the relief Osco Drug requested as summary judgment.

¶ 46. The circuit court also treated Osco Drug's motion as a motion for summary judgment and analyzed the arguments and law accordingly. Summary judgment was granted on the ground that no party demonstrated that a genuine issue of material fact remained in dispute. Neither Rille nor Dr. Galbraith was able to demonstrate a triable issue of fact regarding Osco Drug's negligence, irrespective of the form that the proof must take. Thus, in granting Osco Drug's motion for summary judgment, the circuit court determined that there were no material facts in dispute on the issue of Osco Drug's negligence and that, as a matter of law, Osco Drug was not liable for Rille's injuries. The circuit court had no need to delineate any facts, because the only relevant fact was that there were no facts in dispute as to Osco Drug's liability. It is the absence of facts that provides the basis for the summary judgment.

¶ 47. The circuit court left no room for confusion as to what it was doing. It emphasized at the hearing that "with respect to this case I am granting the motion for summary judgment, and it's on the merits for this case. No question about that."

23

¶ 48. We are not persuaded by Dr. Galbraith's arguments that the summary judgment was really a different decision in disguise. The parties and the circuit court treated the motion as a motion for summary judgment. We see no reason to analyze the circuit court's decision as anything other than a summary judgment.[23] The court has previously recognized that "[a] summary judgment in favor of the defendant is sufficient to meet the requirement of a conclusive and final judgment."[24] We see no reason to depart from this well-established precedent.

---

[23] A similar argument was made in *Precision Erecting*, 224 Wis. 2d at 310–11, namely that the summary judgment was not a summary judgment but rather was a request for approval of the stipulated agreement on payment of claims. The court of appeals declined to adopt this position. It concluded that the motion was noticed and served as a motion for summary judgment and would be treated as such.

[24] *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310–11, 334 N.W.2d 883 (1983).

In *Gies v. Nissen Corp.*, 57 Wis. 2d 371, 382–83, 204 N.W.2d 519 (1973), the court held that the issue of a defendant's liability was determined when the circuit court granted the defendant's motion for summary judgment.

We also find guidance in the Restatement (Second) Judgments (1982): An issue submitted on a motion for summary judgment is an issue actually litigated for purposes of issue preclusion. "A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof." Restatement (Second) Judgments, § 27, comment d (1982).

Wisconsin courts have consistently relied on the Restatement (Second) Judgments for guidance when deciding questions related to issue preclusion. *See, e.g., Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 49, 259 Wis. 2d 587, 657 N.W.2d 411 (2003); *Robinson v. City of West Allis*, 2000 WI 126, ¶ 45, 239

¶ 49. Dr. Galbraith, however, raises another argument why issue preclusion cannot be applied to her[48] contribution claim. Dr. Galbraith insists that the circuit court specifically "reserved" her right to bring a contribution claim and contends that an issue on which a claim is "reserved" is not actually litigated and determined.

¶ 50. Dr. Galbraith does not cite to or rely on any Wisconsin authority to support her contention that the circuit court can "reserve" a party's claims when the reservation might result in inconsistent findings. Indeed, the court of appeals in *Precision Erecting* implicitly foreclosed reserving a party's claim for contribution under the circumstances of that case, declaring: "A court cannot adjudge the facts to be one way with regard to some parties to a multiparty claim and adjudge the same factual dispute another way as to other parties in the same action. That would be absurd. There can be only one finding of each historical fact per case. That the facts might be determined as a result of summary judgment is not material."[25]

¶ 51. In any event, we are not persuaded that the circuit court "reserved" Dr. Galbraith's contribution claim against Osco Drug. Indeed, Dr. Galbraith's brief concedes, as it must, that the very language of the summary judgment order that it drafted relating to future claims "is not a model of clarity in . . . regard" to

---

Wis. 2d 595, 619 N.W.2d 692; *Paige K.B.*, 226 Wis. 2d at 228–29; *Michelle T. v. Crozier,* 173 Wis. 2d 681, 689, 495 N.W.2d 327 (1993); *Precision Erecting,* 224 Wis. 2d at 302; *Heggy,* 156 Wis. 2d at 193; *Landess v. Schmidt,* 115 Wis. 2d 186, 196–97, 340 N.W.2d 213 (Ct. App. 1983).

[25] *Precision Erecting,* 224 Wis. 2d at 310.

preserving her contribution claim.[26] Our review of the record on Osco Drug's summary judgment motion reveals that the circuit court was not "reserving" Dr. Galbraith's claim, despite Dr. Galbraith's request, but in fact was reserving judgment on the viability of any contribution claim Dr. Galbraith might file after summary judgment was granted until the claim for contribution was actually filed and challenged.

¶ 52. Evident from the transcript is the circuit court's concern that it did not have the power to make an anticipatory ruling on a possible contribution claim. For instance, the circuit court announced: "I am sure that counsel is well aware, that the Court can only rule upon matters that are before it and not on anticipatory matters maybe in the future, potential claims, cause of action."

¶ 53. Later, the circuit court similarly stated:

[T]he Court can't look into the future and say, well, there's possible claims out there and so I shouldn't rule on the case that's before me or the question that's before me. I can't do that. I can't judge potential claims that might be out there but not pleaded that may arise in the future, nor can I in this case prohibit any party from bringing any other action that they wish to bring against another party.

¶ 54. The circuit court clearly avoided ruling on the effect of the summary judgment on Dr. Galbraith's contribution claim, stating that "[i]f someone would bring an action for contribution against Osco, that would have to be determined if the statute in question would allow that, if the case law would allow that." The circuit court announced:

---

[26] Brief and Appendix of Defendants and Third Party Plaintiffs-Appellants at 20.

I cannot preclude any party from starting a contribution action and I cannot bar a party from starting a contribution action because I don't have all the facts before me on that. I cannot restrict Osco's position of saying you should have brought it, and that certainly is their right to object at that time to any further contribution action; nor can I at this time tell [Dr. Galbraith] that you can't bring a contribution action. That issue just isn't before me at this time and before the Court, and therefore I actually have no authority to rule on such a matter that is not before me in this decision.

¶ 55. The transcript shows that the circuit court did not intend to "preserve" or "reserve" or "carve out" Dr. Galbraith's right to bring a contribution claim free from a challenge on the ground of issue preclusion, although Dr. Galbraith requested such a carve-out. Instead, the circuit court refrained from deciding the effect of the summary judgment on any contribution claim Dr. Galbraith might file until the contribution claim was actually before the circuit court. The impact of summary judgment on Dr. Galbraith's contribution claim, the circuit court made clear, was to be litigated at a later point.

¶ 56. The order granting Osco Drug's motion for summary judgment and dismissing Rille's claim against Osco Drug can be similarly understood as adopting the circuit court's "wait and see" position. The order, memorializing the circuit court's discussion at the hearing, did not bar the parties from bringing their respective claims and raising their respective defenses. The order states that "this order is no way intended to affect the rights of other parties to pursue claims under appropriate statutory and/or case law." This language allows the parties to pursue their claims, but does not mention—let alone guarantee—that the doctrine of issue preclu-

27

sion will not apply. Under the order, if Dr. Galbraith filed her third-party complaint against Osco Drug seeking contribution, Osco Drug could raise the doctrine of issue preclusion.

¶ 57. One might ask why the circuit court avoided ruling at the summary judgment hearing whether Dr. Galbraith's contribution claim was barred by the doctrine of issue preclusion. Arguably, the circuit court could have, on argument of the parties, answered the first step of the inquiry, a question of law, at the summary judgment motion hearing, but without anything more in the record might not have been able to address the second step of the inquiry, an exercise of discretion, at that stage of the proceeding.

¶ 58. For the reasons set forth, we conclude as a matter of law that the issue of Osco Drug's negligence was actually litigated and determined in the summary judgment proceeding by a valid judgment and that the determination was essential to the judgment.

¶ 59. Having decided that issue preclusion applies as a matter of law to this third-party complaint for contribution, we next determine whether the circuit court erroneously exercised its discretion when it applied issue preclusion to bar Dr. Galbraith from litigating Osco Drug's negligence in her claim for contribution.

IV

¶ 60. The circuit court, as we have explained, may permit or deny the application of the doctrine of issue preclusion on the basis of fundamental fairness. This discretionary decision is "bottomed in guarantees of due process which require that a person must have had a

fair opportunity procedurally, substantively and evidentially to pursue the claim before a second litigation will be precluded."[27]

■

¶ 61. A circuit court generally examines five factors in determining whether the application of issue preclusion satisfies notions of fundamental fairness. The factors to be considered in determining whether to apply issue preclusion are as follows:

1) Could the party against whom preclusion is sought have obtained review of the judgment as a matter of law;

2) Is the question one of law that involves two distinct claims or intervening contextual shifts in the law;

3) Do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue;

4) Have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; and

5) Are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?[28]

---

[27] *Precision Erecting,* 224 Wis. 2d at 305 (quoting *Amber J.F. v. Richard B.,* 205 Wis. 2d 510, 520, 557 N.W.2d 84 (Ct. App. 1996)).

[28] *Michelle T.,* 173 Wis. 2d at 689 (citing "Exceptions to the General Rule of Issue Preclusion" set forth in Restatement (Second) Judgments § 28 at 273–74 (1982))); *Precision Erecting,* 224 Wis. 2d at 305.

¶ 62. The weight to be given to each of these factors involves a circuit court's exercise of discretion.[29] Factors 1, 2, and 4 of the analysis present questions of law. Factors 3 and 5 generally fall within the circuit court's exercise of discretion.

¶ 63. These enumerated factors are illustrative; they are not exclusive or dispositive. The "most important factor to be considered is fairness to the party against whom preclusion is asserted, and this fairness determination should be made on a case-by-case basis."[30] The final decision whether the doctrine of issue preclusion should be applied rests on the circuit court's sense of justice and equity.

¶ 64. Before we apply the five factors to the instant case, we examine *Precision Erecting v. M & I Marshall & Ilsley Bank, G.A.P., Inc.*, 224 Wis. 2d 288, 592 N.W.2d 5 (Ct. App. 1998), a case substantially similar to the case at bar. Applying the five factors, *Precision Erecting* upheld the circuit court's exercise of discretion in precluding a party-defendant from relitigating an issue decided on summary judgment against a co-defendant. *Precision Erecting* is a seminal case discussing a party-defendant's obligations on a motion for summary judgment to avoid issue preclusion and the circuit court's exercise of its discretion in applying issue preclusion.

¶ 65. The parties in the present case focused on *Precision Erecting* in the summary judgment proceedings and in the proceedings to dismiss the third-party complaint, and on appeal focus on the application of *Precision Erecting* to the present case.

---

[29] *Precision Erecting*, 224 Wis. 2d at 305.

[30] *Id.* at 306 (citing *Michelle T.*, 173 Wis. 2d at 692–93).

¶ 66. Precision Erecting filed suit against AFW Foundry for payment of overdue bills. AFW responded by filing a third-party complaint against Antonic & Associates, Nambe Mills, Inc., and twenty-one other third party defendants.[31]

¶ 67. The facts in *Precision Erecting* were, for purposes of issue preclusion, undisputed. AFW Foundry contracted with Antonic to coordinate an improvement project. As part of this project, Antonic purchased a piece of equipment from Nambe, making only a $7,000 down payment on the $70,000 purchase price. Antonic was also derelict in paying subcontractors and suppliers, one of which was Precision Electric.

¶ 68. In its third party complaint, AFW alleged that Antonic was not its agent, but rather was a general contractor, and that AFW's liability was limited to the amount it owed Antonic—an amount far less than the $365,000 the third-party defendants claimed was due.

¶ 69. Both Antonic and Nambe filed answers to the third-party complaint, alleging that Antonic was an agent, not a general contractor.

¶ 70. AFW then moved for summary judgment against all of the third-party defendants, requesting a

---

[31] In contrast, Dr. Galbraith did not file a third-party complaint against Osco Drug before Osco Drug moved for summary judgment. This procedural difference between *Precision Erecting* and the present case is not significant because Dr. Galbraith's contemplation of a third-party complaint against Osco Drug for contribution was at all times well known to the parties and the circuit court. The same concerns described in *Precision Erecting* about the obligations of a party-defendant on a motion for summary judgment and the problems arising when a party-defendant does not object to the summary judgment motion are present in the case at bar.

judgment affixing its liability as the amount it owed under the contract to Antonic. Antonic did not oppose AFW's motion for summary judgment and submitted a letter to that effect. Nambe did not respond to the summary judgment motion at all. The circuit court granted summary judgment, declaring that Antonic was a general contractor and directing that the third party defendants be paid pro rata from the amount AWF owed Antonic. The circuit court ordered judgment in favor of Nambe for $11,340, an amount equivalent to 18% of Nambe's claim.

¶ 71. Nambe appealed from this judgment, arguing that Antonic was an agent of AFW rather than a general contractor. Antonic contended that the doctrine of issue preclusion barred Nambe's appeal, that is, that Antonic's status as general contractor was established by the summary judgment. The court of appeals agreed with Antonic.

¶ 72. The *Precision Erecting* court declared that in the interests of fundamental fairness and finality, "[i]f a litigant who is not the subject of the motion for summary judgment nonetheless has reason to dispute the facts supporting the motion, it is that litigant's duty to appear and object to the motion."[32] The litigant "should have asserted itself at the summary judgment stage if it felt material facts regarding [the other party's liability] were in dispute."[33] The very fact that a party moves for a summary judgment alerts the other parties that someone is alleging that there are no facts in dispute.[34]

---

[32] *Precision Erecting,* 224 Wis. 2d at 292–93.

[33] *Id.* at 301.

[34] *Id.* at 309–10.

¶ 73. In other words, under *Precision Erecting,* in the interest of fundamental fairness a circuit court may apply issue preclusion unless a litigant "appears and objects" on the merits to a motion for summary judgment, informing the circuit court of any disputed material facts.[35] If a litigant does not appear and object and summary judgment of dismissal is granted, a circuit court may in the exercise of discretion conclude that the facts underlying the summary judgment are binding on all parties to the suit as a matter of issue preclusion.[36] To allow a litigant to take a "wait and see" position detracts from finality of judgments and paves the way for inconsistent decisions on the same set of facts.[37]

¶ 74. Dr. Galbraith argues that she did all that was required by *Precision Erecting* to avoid the doctrine of issue preclusion from applying to her. We disagree with her position.

¶ 75. True, Dr. Galbraith, unlike Nambe in *Precision Erecting,* did appear at the hearing on the motion for summary judgment. She asked the circuit court to reserve her contribution claim. She could have, however, objected to or challenged Osco Drug's motion for summary judgment on the merits. She did not. Dr. Galbraith could have secured her own expert witnesses and filed expert reports establishing Osco Drug's negligence. She did not. Dr. Galbraith could have demonstrated a triable issue of material fact, proving to the circuit court that summary judgment in favor of Osco

---

[35] *Id.* at 309.

[36] *Id.* at 310.

[37] *Id.*

Drug was not appropriate as a matter of law. She did not. Dr. Galbraith could have moved for a continuance pursuant to Wis. Stat. § 802.08(4) to gain more time to conduct depositions or obtain affidavits necessary to challenge a motion for summary judgment on the merits. She did not. She took none of these steps and offers no explanation for her failure to do so other than that she is not required to file a third-party complaint for contribution in the original tort action.

¶ 76. Instead Dr. Galbraith merely asked that any dismissal of Osco Drug be without prejudice to her claim against Osco Drug. Although Dr. Galbraith thus opposed the summary judgment motion, it is not the legal opposition envisioned by *Precision Erecting*. The litigation envisioned by *Precision Erecting* under the circumstances of the present case was litigation on the merits of the issue, litigation that would foster judicial efficiency and finality, ensure the stability of judgments, and guard against inconsistent decisions on the same set of facts.

¶ 77. We therefore conclude that *Precision Erecting* teaches that the doctrine of issue preclusion may be applied against Dr. Galbraith's third-party complaint. We must now determine whether in applying the five factors of fundamental fairness the circuit court properly exercised its discretion in barring Dr. Galbraith from re-litigating the issue of Osco Drug's liability in her contribution claim against Osco Drug.

B

¶ 78. Neither the transcript of the hearing on Osco Drug's motion to dismiss Dr. Galbraith's third-party complaint on the ground of issue preclusion nor the order of dismissal includes a statement by the

34

circuit court carefully analyzing each of the five factors of fundamental fairness. Nevertheless, the transcript of the hearing demonstrates that the circuit court heard lengthy arguments from all the parties, including Rille, and had read the briefs explicating *Precision Erecting* and its application to the present case. The transcript of the exchanges among the lawyers and the circuit court evidences that all the participants were very familiar with *Precision Erecting* and the issues raised and decided therein and the need for the circuit court to balance the competing interests.

¶ 79. The circuit court carefully followed counsels' arguments, commenting on them as the hearing proceeded. The circuit court concluded that *Precision Erecting* is on all fours with this case and that it would apply *Precision Erecting* in this case. The circuit court concluded that "all five of the factors that are recited in *Precision Erecting* as borrowed from . . . *Crozier* . . . are applicable here."

¶ 80. Dr. Galbraith urges this court to overrule the circuit court, insisting that application of issue preclusion in her case is fundamentally unfair. She asserts that she did not sit back while Osco Drug moved for summary judgment and that the text of the summary judgment order for summary judgment protects her contribution claim.

¶ 81. In contrast, Osco Drug and Rille argue that the circuit court did not erroneously exercise its discretion and that it was fundamentally fair for the circuit court to apply issue preclusion in the current case. They claim that Dr. Galbraith was aware of and debated the impact of the *Precision Erecting* case on her contribution claim at the summary judgment hearing, that Osco Drug asserted issue preclusion at the summary judgment hearing, and that Dr. Galbraith strategically

35

chose not to oppose Osco Drug's motion for summary judgment on the merits when she had the opportunity. The only fair result under these circumstances, they say, is to make Dr. Galbraith shoulder the burden of her strategy.

¶ 82. All the facts were known to the circuit court. Our role in reviewing the circuit court's decision is limited. When reviewing a circuit court's exercise of discretion, this court cannot substitute its own judgment for that of the circuit court and determine for itself whether issue preclusion was fundamentally fair under the circumstances. Rather, this court limits its review to determining whether the circuit court erroneously exercised its discretion. The final decision on the application of issue preclusion rests on the circuit court's sense of justice and equity.

¶ 83. Keeping this standard of review in mind, we examine the five factors used to determine whether the application of issue preclusion is fundamentally fair.

¶ 84. Under the first factor, the parties debate whether Dr. Galbraith could have obtained appellate review of the summary judgment.

¶ 85. Dr. Galbraith argues that she could not have appealed the order granting Osco Drug's motion for summary judgment and dismissing Osco Drug from Rille's action because she got the relief she had requested, that is, the order she proposed was adopted, and it stated that the decision would not affect her contribution claim. But Dr. Galbraith had requested that the motion for summary judgment be granted "without prejudice" and the circuit court entered the motion "with prejudice." Although the circuit court

adopted Dr. Galbraith's proposed order, the language in the order relating to future claims was broad and, as Dr. Galbraith concedes, was not a model of clarity. The order could be understood as simply memorializing the circuit court's declaration at the hearing that the circuit court would not rule on the impact of its decision until a claim for contribution was actually filed and challenged.

■■■

¶ 86. Osco Drug contends that Dr. Galbraith was aggrieved by the dismissal of Rille's negligence claim against Osco Drug and had the right to appeal. A party can appeal the dismissal of a co-defendant from a lawsuit, even when no third-party complaint has been filed, since "[t]he dismissal of the co-defendants adversely affects a substantial interest."[38]

¶ 87. The parties discussed this first factor at the hearing on the motion to dismiss, and the circuit court concluded that Dr. Galbraith had waived her right to appeal. We need not decide this question of law to determine whether the circuit court erroneously exercised its discretion in applying the doctrine of issue preclusion in the present case.

¶ 88. The second factor examines whether the claims are distinct or whether there was an intervening contextual shift in the law. Dr. Galbraith argues that her contribution claim is a distinct claim because it is a contingent claim and is not triggered until after she is adjudged liable. Dr. Galbraith's argument is not persuasive. Although Dr. Galbraith's contribution claim is a

---

[38] *Weina*, 177 Wis. 2d at 345–47 (although no third party claim for contribution was filed, a defendant may appeal a summary judgment dismissing a co-defendant to preserve contribution rights).

"separate and distinct" claim, it is interwoven with a finding of Osco Drug's negligence in Rille's underlying tort suit. The issue of Osco Drug's negligence was the same in both the summary judgment proceeding and the motion to dismiss proceeding. A finding of Osco Drug's negligence is necessary for Dr. Galbraith to succeed on any contribution claim. There was no shift in negligence law between the summary judgment decision and the dismissal of the third party complaint. This factor weighs in Osco Drug's favor.

¶ 89. The third factor examines the difference between the nature and extensiveness of the proceedings in the court that granted summary judgment and in the court that dismissed the third party complaint. This factor is meant to protect parties from issue preclusion when the proceedings in the second action differ in quality and extensiveness from the first proceedings.

¶ 90. Dr. Galbraith attempts to argue that issue preclusion should not apply because Rille failed to prosecute the claim and Osco Drug's motion for summary judgment went unchallenged. She argues she should have an opportunity to litigate Osco Drug's negligence fully. This argument misses the mark.

¶ 91. This factor does not explore how well the parties litigated in the first proceeding or the extent of their efforts. This factor examines the procedural aspects of the first proceeding, such as the ability to conduct discovery and introduce evidence, the availability of counsel, and the relative burdens of proof.[39] Here, the two proceedings, the summary judgment and the

---

[39] *Lindas v. Cady,* 183 Wis. 2d 547, 557, 515 N.W.2d 458 (1994).

dismissal of the third-party complaint, were substantially identical proceedings involving the same civil action before the same circuit court. Dr. Galbraith had the opportunity to conduct discovery and introduce evidence in the summary judgment hearing. This factor favors Osco Drug.

¶ 92. We agree with the parties that the fourth factor has no bearing on this case. The burden on the contribution claim remained with Dr. Galbraith at all times: "The party asserting the right of contribution has the burden of alleging and proving these necessary conditions."[40]

¶ 93. The fifth factor requires the circuit court, in its discretion, to determine whether matters of public policy and individual circumstances render the application of issue preclusion fundamentally unfair.[41]

---

[40] *Johnson v. Heintz,* 73 Wis. 2d 286, 295, 243 N.W.2d 815 (1976).

[41] *Precision Erecting,* 224 Wis. 2d at 308, explains that the Restatement (Second) of Judgments § 28 (1982) lists three reasons why issue preclusion should not be applied under the fifth factor. First, a re-determination of the issue might have an impact on persons not party to the initial action. (Here Dr. Galbraith was a party in the initial summary judgment proceeding.) Second, it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action. (Here it was foreseeable that Dr. Galbraith would file a contribution claim against Osco Drug and that claim depended on Osco Drug being held causally negligent.) Third, the party sought to be precluded did not have, as a result of the conduct of an adversary or other special circumstances, an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action. (Dr. Galbraith had an adequate opportunity and incentive to obtain a full and fair adjudication of Osco Drug's negligence in the summary judgment proceeding.)

¶ 94. The circuit court must weigh competing interests under this step of the fundamental fairness analysis. The interests of the party facing issue preclusion are important, including whether the party to be precluded was afforded full due process rights to litigate the issue in the previous proceeding. The circuit court must also consider, however, the expense and inconvenience to the other parties who may have to relitigate an issue, the burden on judicial resources, and the interest in finality of judgments. In short, in deciding whether to apply issue preclusion, a circuit court must "balance competing goals of judicial efficiency and finality, protection against repetitious or harassing litigation, and the right to litigate one's claims."[42]

¶ 95. Some may consider this case a close one on the fifth factor, fundamental fairness. After all, Dr. Galbraith attempted to preserve her ability to bring a contribution claim against Osco Drug. She did not completely "sit on [her] hands" and do absolutely nothing, inaction condemned by *Precision Erecting*.[43] Furthermore, inasmuch as the circuit court's summary judgment order adopted Dr. Galbraith's language, over Osco Drug's strenuous objection, Dr. Galbraith could have thought she had "won," that is, that she could bring her contribution claim free from the preclusive effect of Osco Drug's summary judgment. Dr. Galbraith is, in effect, claiming that she was misled by the circuit court's actions in granting Osco Drug's motion for summary judgment incorporating her language in the order for summary judgment. Dr. Galbraith also relies on an amended scheduling order the circuit court

---

[42] *Michelle T.,* 173 Wis. 2d at 688.

[43] *Precision Erecting,* 224 Wis. 2d at 309.

entered (by stipulation of Rille and Dr. Galbraith), providing time in which Dr. Galbraith could pursue discovery, name experts, and add parties. Dr. Galbraith contends that this scheduling order was a "green light" from the circuit court to pursue her contribution claim against Osco Drug.

¶ 96. The circuit court did not find Dr. Galbraith's characterization of the events persuasive, although it considered the expectations of Dr. Galbraith and her argument that she attempted to reserve her rights in the summary judgment proceeding. The circuit court stated that "in fairness, there was discussion [in the summary judgment motion proceedings] about reserving abilities, and even Judge Fiorenza acknowledged there may be a question at a later date."

¶ 97. The circuit court knew that Dr. Galbraith was a party to the action and received notice of the pending motion for summary judgment; that Dr. Galbraith had the opportunity to challenge Osco Drug's motion for summary judgment on the merits; that Dr. Galbraith participated in the hearing, knowing that Osco Drug would claim issue preclusion in response to her contribution claim; that the circuit court was withholding decision on issue preclusion; and that the amended scheduling order could not have meant that if Dr. Galbraith filed a third-party complaint the new party would have no right to object, including on issue preclusion grounds. The circuit court concluded that Dr. Galbraith was afforded her due process rights, made a strategic decision not to pursue discovery and the contribution claim at the summary judgment stage, and took her chances on losing on the doctrine of issue preclusion.

¶ 98. Moreover, it is not just Dr. Galbraith's interests the circuit court had to consider. The circuit court

41

had to consider the effect of issue preclusion on the other parties to the litigation.

¶ 99. If the summary judgment does not have preclusive effect, then the summary judgment may prove to be but a "hollow victory" for Osco Drug. Osco Drug will have to defend itself against the third-party complaint, may be found negligent, and may be held liable for contribution. Osco Drug will have to re-litigate the same issues already decided in its favor in the summary judgment.

¶ 100. Furthermore, if the summary judgment does not have preclusive effect, Rille's claim against Dr. Galbraith might be adversely affected. Rille (and the Wisconsin Academy of Trial Lawyers in its nonparty brief) argue that Rille might be harmed if Dr. Galbraith is permitted to relitigate Osco Drug's negligence: a jury might find in a special verdict in Rille's lawsuit that Osco Drug was liable for Rille's injuries, but, because of the earlier summary judgment, Rille would not be able to recover from Osco Drug and might recover only partial damages from Dr. Galbraith.[44]

---

[44] Rille also argues, however, that Dr. Galbraith would not be permitted to present evidence against Osco Drug in the Rille trial against Dr. Galbraith, citing *Haase v. R & P Indus. Chimney Repair Co., Inc.,* 140 Wis. 2d 187, 409 N.W.2d 423 (Ct. App. 1987).

The circuit court refrained from ruling on whether Dr. Galbraith could refer to Osco Drug during trial of Rille's medical malpractice claim. The circuit court announced: "[M]y decision shouldn't be interpreted that I am foreclosing [Galbraith] from making any reference to Osco [during the course of trial]. I can't do that at this time, nor am I indicating that counsel for the plaintiff can't argue that point. I think it's more appropriately brought to the trial court's attention either at the time that it's brought up at the time of trial, or by a motion in limine where

¶ 101. Additionally, if Dr. Galbraith is not precluded from litigating her contribution claim, gamesmanship by the parties and abuse of the system might be encouraged. The nonparty brief of the Wisconsin Academy of Trial Lawyers details how defendants in multi-defendant cases may use a holding of no issue preclusion under the facts of the present case to engage in gamesmanship and work together to avoid liability in similar multiple party lawsuits. As the *Precision Erecting* court explained, "[t]o not apply issue preclusion in this case would encourage parties ... to sit on their hands and wait to see what happens instead of opposing summary judgment on an issue crucial to their claims. Then, if other parties who put forth the effort to oppose fail, the waiting parties are allowed a second kick at the cat."[45]

¶ 102. Considering all the factors raised at the hearing, the circuit court concluded that the equities favor the application of issue preclusion. This conclusion was a reasonable one.

¶ 103. Some judges may have reached a different conclusion about fundamental fairness under the peculiar facts of the present case were they to have decided this issue in the first instance. But what other judges may have done in the first instance is irrelevant. What matters is that the circuit court reached a reasonable result. We therefore uphold the circuit court's exercise of discretion in determining that the application of issue preclusion in the present case was fundamentally

both parties can fully address that issue ... but in this summary judgment motion I really can't do that."

We need not and do not address this question.

[45] *Precision Erecting,* 224 Wis. 2d at 309.

fair. The circuit court's conclusion was one that a reasonable court could reach on this record.

¶ 104. In sum, for the reasons set forth, we hold that the issue of Osco Drug's liability was actually litigated and determined by summary judgment and that the circuit court did not reserve Dr. Galbraith's claim for contribution in its order on summary judgment. We further hold that the circuit court did not erroneously exercise its discretion when it ruled that application of issue preclusion was fundamentally fair. To preserve her contribution claim against Osco Drug successfully against a challenge on the ground of issue preclusion, Dr. Galbraith should have appeared and objected on the merits to Osco Drug's motion for summary judgment, thereby ensuring that there would be no possibility of inconsistent fact-finding on any issue central to Rille's claim and her own claim. Filing a brief and arguing that her claim for contribution should be preserved for a later date was not adequate, without any justification for her position, to avoid issue preclusion under *Precision Erecting*.

¶ 105. Accordingly, we affirm the order of the circuit court dismissing Dr. Galbraith's third-party complaint seeking contribution from Osco Drug.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 106. JON P. WILCOX, J., took no part.

¶ 107. DAVID T. PROSSER, J. (*dissenting*). Dr. Sheila Galbraith (Dr. Galbraith) seeks reversal of the circuit court's dismissal of her cross-complaint for contribution against Osco Drug, Inc. (Osco). The majority refuses to reinstate her contribution claim. In doing so, the court not only renders a decision that is fundamentally unfair to Dr. Galbraith but also alters and distorts

44

the relationships among plaintiffs and defendants in future cases. Because I disagree with the majority's refusal to reinstate Dr. Galbraith's contribution claim, I respectfully dissent.

¶ 108. The majority decides that issue preclusion should apply as a matter of law to this case because the holding in *Precision Erecting, Inc. v. M&I Marshall & Ilsley Bank, G.A.P.,* 224 Wis. 2d 288, 592 N.W.2d 5 (Ct. App. 1998), does not allow a defendant to preserve a right to bring a contribution claim against a codefendant after the codefendant obtains summary judgment against plaintiffs. The majority also decides that regardless of *Precision Erecting,* the circuit court did not in fact preserve Dr. Galbraith's contribution claim against Osco. In justifying these decisions, the majority paints a picture in which the holding in *Precision Erecting* is so clear that Dr. Galbraith should have known that a court could not preserve her contribution claim, and that Dr. Galbraith could not have been misled into believing that anything she did in court preserved her contribution claim against Osco.

¶ 109. In my view, the facts and law suggest otherwise. Dr. Galbraith had good reason to believe that the circuit court had preserved her contribution claim and that she was doing all that she was required to do under *Precision Erecting.* In response to Osco's motion for summary judgment, Dr. Galbraith filed a response brief to notify the circuit court that she was not making any claim against Osco at that time but that she still had the right to file a cross-claim or a contribution claim in the future. While Dr. Galbraith did not oppose Osco's summary judgment motion, she noted factual issues that Rille could have raised to oppose the summary judgment motion if Rille had not failed to engage

in discovery.[1] Dr. Galbraith asked the circuit court to specify in its order granting Osco summary judgment that the order was not determinative of any of her claims, or that her claims were preserved.

¶ 110. In its reply to Dr. Galbraith, Osco vigorously opposed Dr. Galbraith's request. It asserted that (1) she had no standing to object or to limit the dismissal sought by Osco because she had not filed any claim against Osco; and (2) she had raised no issue of material fact.

¶ 111. At the hearing on Osco's summary judgment motion, the parties disagreed whether Dr. Galbraith could preserve her contribution claim. Osco argued that the court should grant its summary judgment motion on the merits so that Osco would be able to raise the doctrine of issue preclusion to preclude any later contribution claim filed by Dr. Galbraith. In support of its position that any future contribution claim would be barred, Osco cited *Precision Erecting*. Rille also cited that case to argue that if the circuit court were to grant Osco's motion for summary judgment, Dr. Galbraith would not be able to raise the issue of Osco's negligence at trial. In its argument, Rille discussed the facts of *Precision Erecting* in detail.

¶ 112. In response, Dr. Galbraith contended that, by "stand[ing] up and say[ing] something" about the summary judgment motion, she was doing all that *Precision Erecting* required to preserve her claim. Dr. Galbraith acknowledged that,

---

[1] For instance, Dr. Galbraith specified that there had been no discovery of Osco personnel and no discovery about Osco's policies and procedures, all of which might have revealed Osco's negligence.

46

> If it weren't for the *Precision* case[,] I guess I wouldn't be standing here saying we are objecting, Your Honor. We aren't standing quiet. We are expressing our concern that the Court enter the appropriate order as it relates to the plaintiff and the defendant so it doesn't damage the rest of this case.

¶ 113. The circuit court, Reserve Circuit Judge John Fiorenza presiding, responded that it was granting Osco's motion for summary judgment but that it was not ruling on the effect of summary judgment on Dr. Galbraith's contribution claim. The majority cites the circuit court's discussion to demonstrate that the circuit court did not preserve Dr. Galbraith's right to bring a contribution claim. Majority op., ¶¶ 52–55. If the circuit court's discussion were the only evidence in the record, it would be more difficult to dispute the majority's characterizations. However, the circuit court's discussion is not the only evidence. The circuit court's actions after the hearing are what misled Dr. Galbraith into thinking that she had preserved her right to bring a contribution claim.

¶ 114. After Judge Fiorenza granted Osco's summary judgment motion, Osco and Dr. Galbraith each submitted a proposed order to Mark S. Gempeler, the regularly assigned circuit judge. Osco submitted an order with the following language: "That the Defendant Osco[] Drugs, Inc.'s Motion for Summary Judgment is *Granted* and that Osco Drugs, Inc., is dismissed from this case upon the merits with prejudice."

¶ 115. Dr. Galbraith submitted an alternative order with the following language:

> 1. That the defendant, Osco Drugs, Inc.'s motion for summary judgment is granted, and the complaint of

the plaintiff and all causes of action of the plaintiff against Osco Drugs, Inc. is dismissed upon its merits, with prejudice.

2. That this order is no way intended to affect the rights of other parties to pursue claims under appropriate statutory and/or case law.

¶ 116. In a letter to Judge Gempeler, Osco strongly opposed Dr. Galbraith's proposed order, opining that Dr. Galbraith was still trying to preserve her contribution claim even though Judge Fiorenza had made clear that he was not making an anticipatory ruling on the viability of any future contribution claim. Osco noted that it was ordering a transcript of Judge Fiorenza's proceedings for Judge Gempeler to review. Osco urged Judge Gempeler to ignore Dr. Galbraith's order.

¶ 117. In response, Dr. Galbraith also asked that Judge Gempeler review the transcript of Judge Fiorenza's proceedings before deciding between the two proposed orders and suggested that Judge Fiorenza, who heard the entire argument, might want to sign the order.

¶ 118. Judge Gempeler decided to sign Dr. Galbraith's proposed order, not Osco's. The implications of Judge Gempeler's adoption of Dr. Galbraith's proposed order are compelling and suggest that Judge Gempeler, after reviewing the transcript of the earlier proceedings and comparing the drafts, chose to adopt Dr. Galbraith's proposed order to preserve her right to bring a future contribution claim. The majority, however, claims that the adoption of Dr. Galbraith's proposed order "*can* be similarly understood as adopting the circuit court's 'wait and see' position." Majority op., ¶ 56 (emphasis added). The majority seizes upon Dr.

48

Galbraith's concession that her proposed order was not "a model of clarity" to support its conclusion that the proposed order "*could* be understood as simply memorializing the circuit court's declaration at the hearing that the circuit court would not rule on the impact of its decision until a claim for contribution was actually filed and challenged." Majority op., ¶ 85 (emphasis added).

¶ 119. In relying on Galbraith's concession and in emphasizing what the proposed order *could* mean, the majority fails to acknowledge what the proposed order *did* mean. If Dr. Galbraith's order was simply to memorialize a "wait and see position," it is difficult to comprehend why Osco so vigorously opposed it. Osco acknowledged in its letter to Judge Gempeler that Dr. Galbraith was trying to preserve her contribution claim and therefore urged Judge Gempeler to sign its own proposed order. It is hard to imagine why Dr. Galbraith, who drafted the language in the order that the court actually signed, would have been trying to preserve only the opportunity to file a claim, rather than the right to file a claim without fear of dismissal.

¶ 120. Under the majority's "wait and see" interpretation, it would have made no difference which order Judge Gempeler signed. Dr. Galbraith would have had the opportunity to file a claim under either order—but with no practical chance of success. What Dr. Galbraith was attempting to do with her proposed order was to ensure her right to bring a contribution claim without fear of dismissal. When Judge Gempeler signed her markedly different order, Dr. Galbraith thought she had received the relief that she had requested.

¶ 121. The majority asserts that Dr. Galbraith had the right to obtain appellate review at the time the order was signed because she was an aggrieved party. Majority op., ¶ 86. But Dr. Galbraith had no reason to

think that she was an aggrieved party. The court had approved her version of the order. In addition, upon stipulation of Rille and Dr. Galbraith, the court amended its original scheduling order, giving Dr. Galbraith a new deadline to add any additional party (such as Osco) to the pleadings and to name experts and file expert reports. In reliance on this amended scheduling order, Dr. Galbraith proceeded with discovery against Osco and deposed Osco employees in Phoenix, Arizona, and named experts and provided expert reports supporting Osco's negligence.

¶ 122. Based on these facts, the majority's conclusion that the circuit court did not preserve Dr. Galbraith's contribution claim is fundamentally unfair and unjust. If the law had been clear at the time of Osco's summary judgment motion or if the court had informed Dr. Galbraith that her contribution claim would be precluded by summary judgment, the majority's conclusion would not have worked an injustice. But the circuit court was not clear in its decision, and *Precision Erecting* was not clear in its effect.

¶ 123. The majority cites *Precision Erecting* for the proposition that a court is unable to preserve a party's contribution claim in these circumstances. Majority op., ¶ 50. The majority cites three sentences from *Precision Erecting* to support this proposition, but it fails to consider other relevant language and fails to recognize the facts that distinguish this case from the other. *See id.*

¶ 124. The *Precision Erecting* case involved two lawsuits and multiple parties. AFW Foundry, Inc. (AFW) contracted with Antonic & Associates (Antonic) to oversee a substantial refurbishing of the foundry. Antonic, in turn, engaged various subcontractors and suppliers to effect the refurbishing. When these subcon-

tractors and suppliers were not fully paid, some of them commenced litigation against both AFW and Antonic. *Precision Erecting*, 224 Wis. 2d at 293.

¶ 125. Nambe Mills, Inc. (Nambe), a company in New Mexico, sold a $70,000 muller for AFW to Antonic, receiving a downpayment of $7000. It filed suit against AFW and Antonic in New Mexico when the balance was not paid. Another claimant, Precision Erecting, filed a separate suit against the two defendants in Wisconsin. AFW then filed a third-party complaint in the latter suit against Nambe, Antonic, and 22 other third-party defendants. *Id.* AFW alleged that Antonic was not its agent but rather the general contractor for the project, and thus AFW's liability was limited to the amount it owed Antonic under the contract. *Id.* at 293–94. Antonic and Nambe each filed an answer alleging that Antonic was AFW's agent. *Id.* at 294. Nambe's suit in New Mexico had similarly relied on the theory that Antonic was AFW's agent when it purchased the muller. *Id.* at 293.

¶ 126. AFW subsequently moved for summary judgment against Antonic and some but not all third-party defendants in the *Precision Erecting* case, and Antonic notified the court that it did not oppose the motion. *Id.* at 294. Although Nambe had notice of AFW's motion, *it did not appear on the motion or participate in the proceedings. Id.* The circuit court granted summary judgment, establishing that Antonic was a general contractor, not an agent, and ordered pro rata payments from the amount AFW owed Antonic to the third-party defendants. *Id.* at 294–95. The circuit court ordered judgment in favor of Nambe for $11,340, which represented only 18 percent of Nambe's $63,000 claim. *Id.*

51

¶ 127. Nambe appealed from that judgment, but the court of appeals held that Nambe was precluded from arguing that Antonic was AFW's agent rather than a general contractor. *Id.* at 300–301. The court held that "[i]f a litigant who is not the subject of the motion for summary judgment nonetheless has reason to dispute the facts supporting the motion, it is that litigant's duty to *appear* and *object* to the motion." *Id.* at 292–93 (emphasis added).

¶ 128. The majority disregards this "appear and object" language when it holds that *Precision Erecting* forecloses the court's ability to preserve Dr. Galbraith's contribution claim. *See* majority op., ¶ 50. The majority does not recognize that the "appear and object" language is capable of different meanings in different contexts. To illustrate, "appear and object" could mean that Dr. Galbraith had the duty to file a cross-claim and oppose Osco's summary judgment motion. On the other hand, "appear and object" could mean that Dr. Galbraith simply had the duty to come to the summary judgment hearing and, in Dr. Galbraith's own words, "stand up and say something" as an objection. In fact, Dr. Galbraith did more than appear in the proceeding and make an objection. She did her best to preserve her claim.

¶ 129. The meaning of "appear and object" in the context of contribution claims must have been unclear even to some of the judges who decided *Precision Erecting,* for Judges Nettesheim and Snyder, who were both on the panel that decided *Precision Erecting,* were part of the panel that certified the present case to this court. In the certification, the judges asked this court to determine "the extent of a tort litigant's responsibility to *appear and object* to a motion for summary judgment filed against another party to the tort action, but not

against the litigant, when the litigant seeks to preserve a potential claim for contribution against a party to the motion." *Estate of Rille v. Physicians Ins. Co.*, 2006 WL 1009230 (Ct App. Apr. 19, 2006) (emphasis added).

¶ 130. Because the majority disregards the ambiguity of the "appear and object" language and sidesteps the factual differences in this case from *Precision Erecting*, the majority fails to recognize the ramifications of applying *Precision Erecting* in the context of contribution claims.

¶ 131. While *Precision Erecting* involved a multi-party suit and a summary judgment motion, it did *not* involve a contribution claim or a statute that expressly allows a party to file a contribution claim in a subsequent action.[2]

¶ 132. Moreover, the effect of the summary judgment motion on the parties in *Precision Erecting* was not contingent on any later finding made by the court. Unlike a contribution claim, Nambe's claim for damages was choate at the time of the summary judgment motion. *See State Farm Mutual Auto. Ins. Co. v. Schara,* 56 Wis. 2d 262, 201 N.W.2d 758 (1972) (describing the contingent and inchoate nature of a contribution claim). Therefore, Nambe knew that at some point during litigation it would definitely be arguing the very issue on which summary judgment was granted.

¶ 133. Finally, *Precision Erecting* involved a summary judgment motion against one defendant that was not challenged by a codefendant, even though the issue

[2] Wisconsin Stat. § 893.92 provides the following: "An action for contribution based on tort, if the right of contribution does not arise out of a prior judgment allocating the comparative negligence between the parties, shall be commenced within one year after the cause of action accrues or be barred." Wis. Stat. § 893.92.

being decided clearly affected the codefendant. In those circumstances, Nambe had every incentive to fight summary judgment. Instead, it lay "in the weeds during the initial summary judgment motion." *Precision Erecting,* 224 Wis. 2d at 307. By contrast, Dr. Galbraith did not have every incentive to fight the summary judgment motion because, if she did, she would invite a counter attack by Osco and thereby help plaintiff Rille make its case against both defendants. The *Precision Erecting* decision did not appear to force an alteration of the adversarial relationships among parties. It did not force one defendant to assume the plaintiff's burden of proof against another defendant.

¶ 134. The failure to distinguish *Precision Erecting* from the facts of this case is not only unjust to Dr. Galbraith but also has serious implications for defendants with potential contribution claims in future multiparty lawsuits.

¶ 135. First, as noted, the majority's holding distorts the adversarial relationship among defendants and plaintiffs by forcing codefendants to fight each other instead of fighting the plaintiff.

¶ 136. Second, in its attempt to prevent gamesmanship by defendants, the majority simply shifts the opportunity for gamesmanship from defendants to plaintiffs. Courts have bemoaned defendants' ability to "sit on their hands and wait to see what happens instead of opposing summary judgment on an issue crucial to their claims." *Precision Erecting,* 224 Wis. 2d at 309. The majority writes that "if Dr. Galbraith is not precluded from litigating her contribution claim, gamesmanship by the parties and abuse of the system might be encouraged." Majority op., ¶ 101. The majority, however, ignores the fact that it is giving plaintiffs the opportunity to sit back and allow codefendants to

bloody each other and make the case for them. Plaintiffs can name as many defendants as they would like, and when any of the defendants file a summary judgment motion, the plaintiffs can sit back and let the codefendants fight to keep each other in the game.

¶ 137. Third, applying issue preclusion to Dr. Galbraith's contribution claim runs counter to the purpose of issue preclusion, which is to promote judicial efficiency and finality and protect against harassing litigation. *See Precision Erecting,* 224 Wis. 2d at 304. To apply issue preclusion in this context increases needless litigation by forcing defendants to keep other defendants in the litigation and to file cross-claims before they are found negligent.

¶ 138. The dilemma posed by this holding that pits defendants against each other may be a result of the shifting jurisprudence concerning the doctrine of issue preclusion, which no longer requires an identity or mutuality of parties. *See Michelle T. v. Crozier,* 173 Wis. 2d 681, 687–88, 495 N.W.2d 327 (1993); *Amber J.F. v. Richard B.,* 205 Wis. 2d 510, 518, 557 N.W.2d 84 (Ct. App. 1996). Before courts shifted from formalistic requirements towards less rigid factors, the doctrine of issue preclusion envisioned that parties be formally adverse in order for issue preclusion to apply. Consequently, the older contribution cases cited by the parties may not be applicable.

¶ 139. For example, Rille cites *Gies v. Nissen Corp.,* 57 Wis. 2d 371, 204 N.W.2d 519 (1973), arguing that *Gies* is directly on point and involves the same set of facts. However, *Gies* was decided when the doctrine of issue preclusion still required an identity of parties.

¶ 140. *Gies* involved a summary judgment dismissal of a defendant in a negligence action. The court determined that this dismissal barred the codefendants'

contribution claim against the dismissed defendant (Burghardt). *Id.* at 377. *Gies,* however, is distinguishable from this case because the codefendants were already in an adversarial relationship when the circuit court granted summary judgment in favor of Burghardt against the plaintiffs. Hence, there was an identity of parties under the doctrine of issue preclusion.

¶ 141. In *Gies,* the plaintiffs did not originally file a claim against Burghardt. Rather, the original defendants impleaded Burghardt as a third-party defendant and then filed a cross-complaint against Burghardt. *Id.* at 375, 375 n.1. Burghardt first filed a motion for summary judgment on the issue of its negligence against the plaintiffs, which the court granted. *Id.* at 375–76. When Burghardt later filed a motion for summary judgment against the cross-complaint of the codefendants on the same issue of negligence, the circuit court held that its summary judgment dismissal of Burghardt's claim against the plaintiffs precluded relitigation of the issue of Burghardt's negligence. *Id.* at 376, 378. In holding that the codefendants should have opposed Burghardt's motion for summary judgment against the plaintiffs, the court emphasized the adversarial relationship between the codefendants and Burghardt:

> Although Burghardt filed no responsive pleading as to [the codefendants'] cross complaint, the issue of Burghardt's liability to the plaintiffs was joined between them. Burghardt and the [codefendants] were arrayed on opposite sides of the issue. The issue was proffered by [the codefendants] and controverted by Burghardt. Burghardt and [the codefendants] were adverse parties thereto.

*Id.* at 383.

¶ 142. The court in *United States Fidelity & Guaranty Co. v. Goldblatt Brothers, Inc.,* 142 Wis. 2d 187, 417 N.W.2d 417 (Ct. App. 1987), recognized the importance of adversity of parties under the identity of parties requirement. The court cited both *Gies* and *Bakula v. Schwab,* 167 Wis. 546, 168 N.W. 378 (1918), for the proposition that "the concept of identity of parties requires that the parties be formally adverse, that is, arrayed on opposite sides of the lawsuit."[3] *Goldblatt,* 142 Wis. 2d at 191.

¶ 143. It is doubtful that the present case would have been decided the same as it is now if it had been brought at the same time as *Gies.* In this case, Dr. Galbraith did not implead Osco as a third-party defendant and had not filed a cross-claim at the time of Osco's summary judgment motion. Dr. Galbraith and Osco were therefore not formally adverse parties.

¶ 144. While the shift away from the identity of parties requirement may be justified in the context of other claims such as the one in *Precision Erecting,* we ought to consider whether this shift is justified in the

---

[3] While the court recognized that *Bakula v. Schwab,* 167 Wis. 546, 168 N.W. 378 (1918), was modified eight years later in *Wait v. Pierce,* 191 Wis. 202, 209 N.W. 475 (1926), the court was "unpersuaded that the modification affected the standard for adversity . . ., especially since the supreme court in [*Gies*] closely tracked the language of the *Bakula* adversity test." *United States Fid. & Guar. Co. v. Goldblatt Bros., Inc.,* 142 Wis. 2d 187, 191–92, 417 N.W.2d 417 (Ct. App. 1987). The *Bakula* court defined the standard as the following: "What is meant by adverse parties scarcely needs definition. Its significance is apparent from the expression itself. They must be opposite parties to an issue between them. The issue must be proffered by one and controverted by the other. They must be arrayed on opposite sides of the issue." *Bakula,* 167 Wis. at 555–56.

context of contribution claims. Requiring an identity of parties based on a formal adverse relationship would allow for a more balanced solution for plaintiffs and defendants.

¶ 145. If an identity of parties requirement were preserved in the present circumstances, it would allow a codefendant, like Dr. Galbraith, to have the choice in the underlying lawsuit to remain in a neutral or supportive relationship with her codefendant (Osco) or to establish a formal adversarial relationship by filing an immediate cross-complaint. She would have to make that choice when the other defendant filed a summary judgment motion against the plaintiff. She could choose to remain in a neutral or supportive relationship with the other defendant by appearing and objecting to the summary judgment motion, thus putting the other defendant on notice that she might pursue a cross-claim or contribution claim at a later time. If she chose to remain in this neutral or supportive relationship, she would preserve a right to bring a future cross-claim or separate contribution claim but would waive the opportunity to include the issue of Osco's negligence on a special verdict in the underlying lawsuit between Dr. Galbraith and Rille. *Cf. Haase v. R&P Indus. Chimney Repair Co.*, 140 Wis. 2d 187, 409 N.W.2d 423 (Ct. App. 1987).[4] In the case of a future cross-claim, the issue of

---

[4] In *Haase v. R&P Industrial Chimney Repair Co.*, 140 Wis. 2d 187, 193, 409 N.W.2d 423 (Ct. App. 1987), the court held that where an alleged tortfeasor is adjudged to be free from negligence as a matter of law, the issue of the alleged tortfeasor's negligence should not be included on a special verdict in the plaintiff's action against another alleged joint tortfeasor. The court found inapplicable *Payne v. Bilco Co.*, 54 Wis. 2d 424, 431, 195 N.W.2d 641 (1972), which held that it was necessary to include in the special verdict for comparison

Osco's negligence could be litigated at a separate trial to avoid any prejudice to Rille. *See* Wis. Stat. § 802.07; Wis. Stat. § 805.05(2) (providing that "[t]he court, in furtherance of convenience or to avoid prejudice . . . may order a separate trial of any claim, cross-claim, counterclaim or 3rd-party claim"). This would make the subsequent cross-claim similar to a contribution claim that would be litigated in a subsequent action. *See* Wis. Stat. § 893.92.

¶ 146. If a defendant like Dr. Galbraith did not want to risk losing the opportunity to point the finger at a codefendant like Osco in the underlying lawsuit, she could file a cross-claim and adamantly oppose the codefendant's motion for summary judgment.

¶ 147. This approach would help to preserve the traditional adversarial relationship among plaintiffs and defendants by minimizing the plaintiffs' ability to pit codefendants against each other. While this approach does not eliminate all potential for gamesmanship by the parties, it does maintain the burden on plaintiffs to prove their case before requiring codefendants to do it for them. This approach also allows codefendants, who may have pre-existing relationships with each other, to remain in a supportive relationship as long as possible.

¶ 148. Because I believe this approach is more equitable than the majority's view, I would allow Dr. Galbraith to pursue her contribution claim as a cross-claim in a separate trial or as a separate contribution claim in a subsequent action.

¶ 149. Even if the majority opinion were deemed to set out clear and sound procedure for the future, I

purposes all alleged tortfeasors, regardless of whether they were settling tortfeasors or never parties to the action.

believe it is fundamentally unfair to apply this procedure retroactively. Dr. Galbraith has had the rug pulled out from under her. She would surely have asked for an extension of time to file an immediate cross-complaint against Osco if she had thought that summary judgment would preclude her contribution claim.

¶ 150. For the reasons stated, I respectfully dissent.